## THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK *vs.* G. MOSELY MURRAY.

*Life Insurance—Commutation of Premiums on Distribution Policy by Payment of Lump Sum—Right to Participate in Distribution of Surplus—Evidence as to Special Meaning of Words in a Contract—Practice Act—Counsel Fees.*

A life insurance company issued to the plaintiff a twenty-year distribution policy under which he was required to make certain semi-annual payments for twenty years, at the end of which period he would be entitled to receive the principal sum, together with a distributive share of the surplus. The dividends on all of the policies issued in that year on such distribution policies were accumulated, and made payable at the end of the twenty years to the policies then remaining in force. After plaintiff had made the semi-annual payments for eight years, he asked to be allowed to pay a lump sum so as to avoid the necessity of making semi-annual payments during the remaining years. The company agreed to accept a certain sum in commutation of the payments, but did not inform the plaintiff that his distributive share in the surplus would be thereby affected. He paid the sum demanded, and the company endorsed on the policy "regular premiums on this policy have been commuted by the payment of $2,077.27, making policy paid up." *Held,* that the words "making policy paid up," mean that all of the payments of premiums re quired by the policy had been satisfied; that this commuta-

tion of the premiums did not have the effect of reducing plaintiff's share in the surplus for division among the policies of the class to which his belonged upon maturity, and that the plaintiff is entitled at the expiration of the twenty-year period to recover the principal sum and the dividends to which his policy would have been entitled if he had continued to make semi-annual payments.

Evidence that one party to a written contract understood that certain words used in it had a technical or special meaning is not admissible when the ordinary meaning of those words is different, and it is not shown that the other party to the contract understood them in the alleged technical sense.

A prayer which instructs the jury that if a party retained a policy of insurance for five years without objection after the company had made an endorsement thereon, he acquiesced in any alteration made by the endorsement, is too abstract and irrelevant, when the particular alteration is left undefined and without reference.

When an insurance company at its principal office makes an endorsement on a policy, no question as to the authority of the agent who delivered the policy to the insured is involved.

Local Code, Art. 4, sec. 315, provides that when the plaintiff in certain actions has filed with the declaration the bond, promissory note or other writing or account by which the defendant is indebted, and the defendant shall deny under oath the claim of the plaintiff, and the latter nevertheless recovers a judgment, then the Court may allow to the plaintiff a counsel fee, in addition to the costs of suit. The plaintiff in an action on a matured life insurance policy filed with the declaration an account showing the amount due and the dividends claimed, less loans made to him by the company, but did not file the policy itself because it was in the possession of the defendant as collateral security. *Held,* that since the policy was the obligation on which the defendant was indebted and the plaintiff did not file the same with the declaration, he is not entitled to a counsel fee upon recovering a judgment for the amount claimed.

*Decided December 1st, 1909.*

Appeals from the Superior Court of Baltimore City (HAR-LAN, C. J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and THOMAS, JJ.

*Randolph Barton* and *Aubrey Pearre, Jr.,* for the Mutual Life Insurance Co.

*Jno. J. Donaldson,* for G. Mosely Murray.

SCHMUCKER, J., delivered the opinion of the Court.

This an action of assumpsit instituted under the rule day Act in the Superior Court of Baltimore City by the Rev. G. M. Murray against the Mutual Life Insurance Company of New York to recover a sum alleged to be due under a policy of insurance upon his life. On the trial of the case before the Court without a jury, judgment went against the company and it took an appeal. The record also contains an appeal taken by Mr. Murray from the refusal by the Court of his application for the allowance of a counsel fee under the Act. The two appeals will be considered together.

There is practically no dispute as to the facts of the case. It appears from the record that the company issued to Mr. Murray, on May 10th, 1888, what is known as a "Twenty Year Distribution" policy of insurance on his life for $5,000. The policy called for the payment of semi-annual premius. of $132.40 each, for the period of twenty years at the end of which the $5,000 together with a distributive share of surplus became due and payable to the insured if he was then alive. If the insured died before the expiration of the twenty years the $5,000 became at once payable, but without any share in the surplus. During the twenty years no dividends were payable upon policies of that character but all surplus applicable to them was accumulated until the end of that period and at that time divided between such of them as then

remained in force. For the purposes of such division of surplus the twenty year distribution policies issued in each year formed a separate class.

The policy also provided that after three full annual payments of premiums had been made upon it the insured might at his election have it converted into a paid-up non-participating policy for the proportion of its original amount which the number of full years premiums paid bore to the total number required. In the event of his making such election he was required to surrender his policy to the company and receive in lieu of it a paid up policy which was a new and different style of contract.

After Mr. Murray had paid sixteen semi-annual premiums on his policy he called at the office of the company's Baltimore Agents, O. F. Bresee & Co., and asked Mr. Bresee if he would be permitted to make payment of a lump sum to the company and by that means avoid the necessity of continuing to make semi-annual payments of premiums on his policy. Mr. Bresee told him that he would be permitted to make payment of the remaining premiums in the manner suggested by him if he desired to do so but warned him that if he did it and then died before the expiration of the twenty year period he would loose the sum which he had thus paid as he would then only receive the face of the policy. Mr. Bresee however made no intimation of any kind to Mr. Murray that if he commuted the remaining dividends on the policy in the manner suggested and then survived the twenty years, his distributive share in the surplus would be affected or diminished.

Mr. Murray then paid to Mr. Bresee the sum of two thousand and seventy dollars and twenty-seven cents, that being the amount which the company agreed to receive as a lump sum in lieu of the remaining premiums to fall due on the policy, at the same time handing him the policy to be sent to the company for an endorsement thereon of the transaction.

The policy was in a few weeks returned to Mr. Murray bear-
ing the following endorsement:

"Prems. paid to May 10th, 1896.   A. KLAMROTH, Asst. Secy.
Regular prems. on this policy have
been commuted by payment of      A. KLAMROTH, Asst. Secy.
$2,077.27 making policy paid· up.

T. F. S. Jr.   5/22/96."

Mr. Murray subsequently borrowed money from the com-
pany and deposited the policy with it as collateral security
for the loans, which amounted to a total of $4,726.50 when
the policy matured on May 10th, 1908, at the end of the 20
year period.   A short time before that date Mr. Murray was
informed at the company's Baltimore office that in the divi-
sion of the surplus it had awarded to each policy of the class
to which his belonged, a distributive share of $352.68 on the
thousand of their face value.   At that rate of distribution
Mr. Murray would have been entitled to receive on his policy
its face value of $5,000 less the $4,726.50 of loans due on it,
leaving the net sum of $273.50, which added to $1,763.40,
being a full share of the surplus would have amounted to
$2,036.90.

When he called at the company's office at the expiration of
the 20 year period and asked for the proceeds of his policy,
his right to the $273.50 balance of its face value was con-
ceded but he was informed that the share of surplus to which
his policy was entitled was, by reason of his having com-
muted the payment of his premiums, only $980 and he was
offered a check for $1,253.50 as the full proceeds of his
policy.   He refused to accept the sum thus offered him and,
the company refusing to pay him more, he brought the suit
now before us and recovered judgment for the full amount
of his claim.   The suit was brought upon the common counts
only the plaintiff filing with the declaration an account
charging the company with the balance due on the face of
the policy and a full distributive share of the surplus amount-
ing in all to $2,036.90.   The company as defendant filed the

general issue pleas supported by an affidavit under the Act
and paid $1,253.50 into Court.

The substantial question presented by the company's ap-
peal from the judgment is whether the commutation of prem-
iums made, with its consent, on Mr. Murray's policy, in the
manner shown by the record, had the legal effect of reducing
its share in the surplus for division among the class of pol-
icies to which it belonged. The policy is a written instru-
ment and there appears upon it a written memorandum of
the terms of the commutation, and their interpretation is
therefore under the well-settled law a matter for the Court.
*Roberts* v. *Bonaparte,* 73 Md. 191; *Clark Dist. Company* v.
*Cumberland,* 95 Md. 476. The terms of the policy are free
from ambiguity and it is uncontroverted that if the prem-
iums had been paid at the times therein specified Mr. Mur-
ray would be entitled to the $352.68 per thousand which he
claims out of the surplus. The question is therefore reduced
to the determination of the effect of the commutation of
premiums upon the terms of the policy.

No principle of the interpretation of written instruments
is better settled than that the language in which the parties
have seen fit to express themselves must be given its usual
and ordinary meaning in the absence of evidence that they
intended to employ it in a special or technical sense. 9 *Cyc.*
578; *Hall* v. *Farmers Bank,* 53 Md. 129; *Abbott* v. *Gatch,*
13 Md. 331. Comparing the terms of the memorandum with
those of the policy it is apparent that the only feature of the
policy to which the memorandum relates is the payment of
premiums and it provides in that respect simply for the pay-
ment of a gross sum in cash in lieu of the recurrent semi-
annual payment of premiums. It does not profess to deal
with or modify the clear and distinct terms of the policy
which declare the nature and extent of its right to partici-
pate in the division at the end of the twenty year period. As
its language is clear and simple, nothing not provided for
by its express terms ought to be imported into it by construc-
tion. Its concluding expression "making policy paid up,"

following as it does the previous statements that the premiums had been paid to May 10th, 1896, and that the regular premiums had been commuted by the payment of the gross sum named, means, according to the usual significance of the words used, that all of the payments of premiums required by the policy had been fully satisfied.

It would involve a violent and unwarranted stretch of construction to hold, in the absence of any evidence that both of the parties so intended, that the expression under consideration was intended to take the entire policy out of the class in which its express terms placed it and put it into a different class technically described as "paid-up policies." The policy on its face declares when and how it may be exchanged for a paid-up policy and requires that when that change is desired to be made the policy must be surrendered to the company and a new one issued in its place. We find no evidence in the record tending to show that the language used in the memorandum appearing upon the policy was intended or understood by the parties to the transaction to which it relates to have been used in a technical or special sense or otherwise than according to the ordinary meaning of the words constituting it.

Mr. Murray gave testimony tending to show his purpose in commuting the dividends on his policy and as to his understanding of its effect and the company by its witnesses Hutcheson and Wooten, who testified under a commission, offered evidence tending to show the company's understanding of the effect and meaning of the memorandum of the commutation endorsed upon the policy. All of that testimony was admitted subject to exception and was stricken out by the Court on motion because it was not shown that both parties had the same understanding or that the company's alleged understanding of the effect and meaning of the memorandum was communicated to Mr. Murray or otherwise known to him before he paid it the $2,077.27 in commutation of the dividends. The company's first exception was taken to the striking out of that testimony by the Court. We think for

the reasons already mentioned by us that there was no error in striking it out.

The only other exception taken by the company in the course of the trial below was to the rejection of all of its prayers but in that respect also we approve of the action of the learned judge below.

Of the seven prayers offered by it the first asked the Court to instruct the jury, that there was no legally sufficient evidence that the plaintiff was entitled to recover more than the $1,253.50 paid by it into Court. From what we have already said the Court would not have been justified in granting that prayer.

The second and fourth prayers both erroneously assume that the right of Mr. Murray to participate in the distribution of surplus or dividends at the maturity of the policy in accordance with its express terms was modified by the acceptance from him by the company of the commutation of dividends, there being no agreement shown that it was to have any such effect.

The third and fifth prayers which in effect assert that the Court, sitting as a jury, was confined to the written policy and memorandum and could not consider any verbal representation, agreement or understanding between the parties in construing them, presented corret legal propositions, but as the Court had already stricken out on motion all testimony tending to prove the existence of any such agreements, representations and understandings the defendant was not injured by the rejection of those two prayers.

The sixth prayer is incorrect because, in holding that Mr. Murray by retaining the policy without objection for nearly five years after its return to him with the endorsement upon it, acquiesced in or consented to any alteration thereby made in the status or provisions of the policy without undertaking to define such alleged alterations, it stated a mere abstract or moot proposition which of itself would not form a proper instruction to a jury.

The seventh prayer challenges the authority of Mr. Bresee the agent of the company to accept from Mr. Murray the $2,077.27 in lieu of subsequent premiums except upon condition that it would change the policy to a "paid-up policy" and that "future dividends thereon would be upon the basis of a paid-up policy." That was an improper prayer because the memorandum of the commutation, made in writing by the company itself at its home office when it received the $2,077.27 made no such condition as that set forth in the prayer.

The judgment must be affirmed on the company's appeal.

We will now consider the plaintiff's appeal from the Court's refusal to allow him a counsel fee, under the provisions of the Rule Day Act, now incorporated into the Baltimore City Charter. It was conceded at the hearing of the appeal that to entitle the plaintiff to the fee he must have filed with his declaration "the bond, bill of exchange, promissory note or other writing or account *by which* the defendant is so indebted" to him.

The suit was brought in assumpsit on the common counts, and the following statement or account was filed with the declaration:

"The Mutual Life Insurance Company of New York.

To G. Moseley Murray   Dr.

1908.

| | | | |
|---|---|---|---:|
| May 10 | | To principal due this date of said Company's policy No. 324,564 (of which the original is now in the possession of said Company, having been by him to it delivered as security for the loans, hereinafter mentioned, from it to him) ............ | $5,000.00 |
| " | " | To amount of Distribution (or dividends) due on account of said policy according to the terms thereof..................... | 1,763.40 |
| | | | $6,763.40 |

Cr.

| | | | |
|---|---|---|---:|
| " | " | By amount of loans on policy to date from it to him............................. | 4,726.50 |

" " Balance due by Company to him this date, $2,036.90"

The plaintiff ingeniously contends on his brief that this is the account by which the company is indebted to him within the meaning of the statute. He insists that as there had been dealings between the parties of borrowing and lending after the issue of the policy, and the amount of the dividends on the policy were not ascertainable until its maturity they had changed their relations to those of account and there was no way of ascertaining the amount then due except by stating the account which was filed. A brief glance at the "account" filed will disclose the fallacy of the plaintiff's contention. The amounts claimed to be due are plainly stated on the face of the account to be the principal of the policy of insurance and the dividends due *on it*. The only function of mentioning the loans in the account is to show the source, not of the indebtedness, but of the credits which plaintiff admits. The balance remaining due in excess of these credits is just as truly due *upon the policy* as the whole indebtedness would have been, if there had been no credits at all.

If the plaintiff sues for money due to him under the terms of a written contract or obligation he must file the obligation itself, and not merely a statement of the amount claimed to be due under it, in order to comply with the provisions of the Act. *Poe's Practice,* sec 413; *Com. Bank* v. *Kirkland,* 102 Md. 662.

It did not avail the plaintiff anything to say in the statement filed with his declaration that the policy itself was in the defendant's possession where it had been placed as collateral security for loans. That information explained why he was unable to comply with the terms of the Act and file the policy in Court but his unfortunate inability in that respect did not enlarge the statutory jurisdiction of the Court which was exercisable only when the Act had been complied with.

We find no error in the Court's refusal to allow the fee and as we have found none in its other rulings on either appeal the case must be affirmed upon both appeals.

> *Judgment and order appealed from af-*
> *firmed with costs of each appeal to be*
> *paid by the appellant therein.*