556 A.2d 1135

Theresa M. CHENEY

v.

BELL NATIONAL LIFE INSURANCE COMPANY.

No. 69, Sept. Term, 1987.

Court of Appeals of Maryland.

May 3, 1989.

Joseph A. Miklasz (James P. Mara, on the brief), Glen Burnie, for appellant.

Ira L. Oring (George F. Pappas and Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

McAULIFFE, Judge.

This case involves the proper interpretation of a policy of insurance. The controlling facts are not in dispute. Petitioner is the surviving spouse of Anthony C. Cheney, (hereinafter "the insured"), who died in 1982. There was in effect at the time of his death a policy of insurance issued by respondent, under the terms of which respondent agreed to pay a designated amount in the event of the accidental death of the insured, subject to certain exclusions. The exclusion involved here is as follows:

> The policy does not apply to any loss ... caused by or resulting from ... sickness or disease or medical or surgical treatment therefore (sic) except pyogenic infection which shall occur through an accidental cut or wound....

The insured, who was 24 at the time of his death, was a hemophiliac. Hemophilia is an inherited disorder of the blood, characterized by a tendency toward excessive internal or external bleeding, and caused by a defect in the coagulating power of the blood. Tragically, the insured was infected with the AIDS virus [1] as a result of a blood transfusion he received as part of the routine treatment of his hemophilia. The precise cause of death was respiratory arrest due to a form of pneumonia, but it is clear that this was a direct consequence of the AIDS virus.

Petitioner filed a claim for payment under the policy, alleging that her husband's death was due to an accident. Respondent refused payment, and petitioner filed suit in the Circuit Court for Baltimore City. Respondent asked for summary judgment, stating that it would assume for the purpose of the motion that an accidental injury had occurred, and contending that the exclusion from coverage applied because: 1) death resulted from a sickness or disease, or 2) death resulted from medical treatment for a sickness or disease. Judge Elsbeth Bothe granted the

---

1. AIDS is the acronym for Acquired Immunodeficiency Syndrome.

motion for summary judgment, apparently finding respondent to be correct on both points. Petitioner appealed, and the Court of Special Appeals affirmed, agreeing with the reasoning of the trial judge, and also suggesting that there had been no "accident" within the meaning of the policy. *Cheney v. Bell Nat'l Life Ins.*, 70 Md.App. 163, 520 A.2d 402 (1987). We granted certiorari, and we affirm.

■ We shall assume, as did the parties and trial judge, that the requirement of an accidental injury was met. Respondent made it clear that it was grounding its motion on that contention, and thus the point was neither presented to nor decided by the trial judge. Although the rule may be different in other situations, ordinarily we will not affirm the granting of a summary judgment for a reason not relied upon by the trial judge. *Henley v. Prince George's County*, 305 Md. 320, 333, 503 A.2d 1333 (1986).

We begin with a consideration of respondent's contention that coverage is excluded because death resulted from a sickness or disease. Beguiling in its apparent simplicity, the argument is nevertheless wrong. Within the context of an accident policy, this Court held more than 80 years ago that:

> [W]here the death is from a disease which was itself caused by the accident, the latter is to be regarded as the true and predominant cause of the death, and the disease as a mere link in the chain of causation, and the death is to be regarded as having resulted solely from the accident independently of all other causes. *General Acc. Co. v. Homely*, 109 Md. 93, 99, 71 A. 524 (1908).

*See also* 1B Appleman, *Insurance Law and Practice* § 394 (1981). Assuming that the transfusion of contaminated blood or blood products into the insured constituted an accidental injury within the meaning of the policy, the AIDS and pneumonia caused thereby are considered "link(s) in the chain of causation," and the accidental injury remains the cause of death.

Respondent's second contention presents more difficult problems. The determination of whether death resulted from medical treatment for sickness or disease involves two separate questions—first, when did the accidental injury occur; and second, is congenital hemophilia suffered by the insured a "sickness or disease" within the meaning of the policy?

The first question, involving the time of the accidental injury, flows from an interesting effort on the part of petitioner to avoid the "medical treatment" exclusion. If, as it would appear at first blush, the accidental injury occurred when the contaminated blood was injected into the insured, then death did result from medical treatment for hemophilia, and if hemophilia is a sickness or disease, the exclusion applies. If, on the other hand, and as petitioner contends, the operative accident occurred when the blood was drawn from an infected donor, then the accident causing death occurred before any medical treatment of the insured, and the exclusion would not apply. Creative as the argument may be, it is not persuasive.

The policy provision defining injury and the scope of coverage provides as follows:

> The term "injury" as used in the policy shall mean accidental bodily injuries from which loss results directly and independently of all other causes, provided such injuries are sustained by an insured person while the policy is in force with respect to such person.

When the loss is death, that loss must occur "within 365 days after the date of accident causing such loss." And, as we have seen, loss resulting from medical treatment for sickness or disease is excluded. These policy provisions obviously contemplate an "accidental bodily injury," i.e., an accidental injury [2] to the person of an insured that results in

---

2. Because the question of the occurrence of an accidental bodily injury is not before us, we intimate no view as to whether the occurrence must involve accidental means, or whether an accidental result will suffice. We do note, however, that this policy did not

a loss. However accidental the taking of contaminated blood from a donor may have been, that occurrence could not qualify as an accidental bodily injury within the meaning of this policy.

The accidental bodily injury that the parties have assumed to exist for the purpose of deciding respondent's motion for summary judgment is the injection of the contaminated blood or blood products into the body of the insured. The final question presented, therefore, is whether the death which resulted from that accidental bodily injury is a "loss ... resulting from ... sickness or disease or medical or surgical treatment." Without question, death resulted from the transfusion and, therefore, the loss resulted from medical treatment for hemophilia. The question that remains is whether this insured's hemophilia was a sickness or disease within the meaning of the policy. Because there is no factual dispute in the evidence, and no suggestion that parol or other extrinsic evidence exists in this case, the question of interpretation is for the Court. *Pacific Indem. v. Interstate Fire & Cas.*, 302 Md. 383, 389, 488 A.2d 486 (1985).

In the interpretation of the meaning of an insurance contract, we accord a word its usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in a special or technical sense. *Id.* at 388, 488 A.2d 486. *Mut. Life Ins. Co. v. Murray*, 111 Md. 600, 605, 75 A. 348 (1909). Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. Rather, following the rule applicable to the construction of

---

contain a requirement that death be caused by "external, violent, and accidental means," or otherwise refer to "accidental means" as has been the case in matters previously considered by this Court. *See Home, Etc. Company v. Partain*, 205 Md. 60, 106 A.2d 79 (1954) and *Life Insurance Co. v. Plummer*, 181 Md. 140, 28 A.2d 856 (1942). For a general discussion of the distinction between "accidental means" and "accidental results," *see Haynes v. Am. Cas. Co.*, 228 Md. 394, 399–400, 179 A.2d 900 (1962).

contracts generally, we hold that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole. In the event of an ambiguity, however, extrinsic and parol evidence may be considered. If no extrinsic or parol evidence is introduced, or if the ambiguity remains after consideration of extrinsic or parol evidence that is introduced, it will be construed against the insurer as the drafter of the instrument. *Pacific Indem., supra,* 302 Md. at 388–89, 488 A.2d 486; *C & H Plumbing v. Employers Mut.,* 264 Md. 510, 512, 287 A.2d 238 (1972); *Mateer v. Reliance Ins. Co.,* 247 Md. 643, 648, 233 A.2d 797 (1967).

The word in question is "disease," and the issue is whether hemophilia is a disease within the meaning of the policy exclusion. Petitioner argues that in the strict medical or scientific sense, hemophilia is not a disease, but is a condition, or a "genetically transmitted trait similar to the genetic transmission of eye color or skin color." In support of her argument, she points to the following definitions from *Dorland's Illustrated Medical Dictionary* (Twenty–Sixth Ed., 1985):

hemophilia—a hereditary hemorrhagic diathesis due to deficiency of coagulation Factor VIII, and characterized by spontaneous or traumatic subcutaneous and intramuscular hemorrhages; bleeding from the mouth, gums, lips and tongue; hematuria; and hemarthroses. It affects males, being transmitted as an x-linked recessive trait.

\*　　\*　　\*　　\*　　\*　　\*

diathesis—a constitution or condition of the body which makes the tissues react in special ways to certain extrinsic stimuli and thus tends to make the person more than usually susceptible to certain diseases.

\*　　\*　　\*　　\*　　\*　　\*

hemorrhagic diathesis—a predisposition to abnormal hemostasis.

We first note that even in the scientific community, there is not unanimity on the question of whether hemophilia is properly referred to as a disease. *Stedman's Medical*

*Dictionary* (Fifth Edition 1984), generally defines hemophilia as "an inherited disorder of the blood marked by a permanent tendency to hemorrhages, spontaneous or traumatic, due to a defect in the coagulating power of the blood," and then lists two types of hemophilia. The first, involving a deficiency of factor VIII, is termed a "condition." The second, caused by a deficiency of factor IX and resembling the first, is called "Christmas disease." Doctors too have referred to hemophilia as a disease. In *Miller v. Life & Casualty Insurance Co. of Tenn.*, 102 Ga.App. 655, 117 S.E.2d 237, 238 (1960), a case involving the causal relationship of congenital hemophilia to a death following traumatic laceration of the liver, the Court said:

> The evidence is clear that the pre-existing infirmity contributed to the death. The first doctor testified: "In my opinion the disease contributed to his death." The second and third doctors, in answer to a question as to whether or not the disease contributed to death, answered, "yes." The evidence shows that hemophilia is a disease caused by a deficiency in the blood, the result of which is that the blood will not clot and which inevitably results in excessive bleeding, after bleeding begins.

More important, however, is the fact that our focus should not be upon the medical or technical meaning of the word. There is not a hint of the existence of extrinsic or parol evidence or any other suggestion that the parties intended to give this word anything other than its ordinary meaning.

The word "disease" is used frequently in health and accident policies, most often as a part of the definition of claims included or excluded from coverage. A number of cases interpreting the meaning of the word may be found in the annotation, *What Conditions Constitute "Disease" Within Terms of Life, Accident, Disability, or Hospitalization Insurance Policy*, 61 A.L.R.3d 822 (1975). Definitions abound, but perhaps the most popular in legal literature is that given by Chief Justice Cardozo in *Silverstein v. Metropolitan Life Insur. Co.*, 254 N.Y. 81, 171 N.E. 914

(1930). In determining that a small, dormant, duodenal ulcer which had produced no symptoms, but which had caused a weakening of the wall of the stomach, was not a disease within the meaning of an insurance policy, Chief Justice Cardozo said for the Court:

A distinction, then, is to be drawn between a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief, in which event it may fairly be described as a disease or an infirmity, and a condition abnormal or unsound when tested by a standard of perfection, yet so remote in its potential mischief that common speech would call it not disease or infirmity, but at most a predisposing tendency. *Id.* 171 N.E. at 915.

Respected treatises in the field of insurance law offer these definitions:

The word "disease," as used in an accident policy excepting from coverage loss caused directly or indirectly, wholly or in part, by ptomaines, bacterial infections, or any other kind of disease, implies a condition which either has impaired, or presumably will impair, if it continues in its usual course of progress, the normal working of some of the bodily or mental functions. 10 *Couch on Insurance 2d* § 41:389 (rev. ed. 1982) (footnote omitted.)

"Disease," as used in [insurance policies covering injuries by accidental means and excluding losses caused by disease], does not refer to a temporary or passing disorder, as an ideal state of health is not contemplated. It refers, rather, to such disorders which in the common speech of men would be regarded as a disease, something settled, definite, or significant. *Appleman, supra,* § 391 (footnotes omitted.)

*Webster's Third New International Dictionary* (1963) defines "disease" as:

an impairment of the normal state of the living animal or plant body or of any of its components that interrupts or modifies the performance of the vital functions, being a response to environmental factors (as malnutrition, indus-

trial hazards, or climate), to specific infective agents (as worms, bacteria, or viruses), to inherent defects of the organism (as various genetic anomalies), or to combinations of these factors.

*Roget's International Thesaurus* 686.18 (Fourth Edition 1977) lists hemophilia under the heading of "blood diseases."

As this Court pointed out in *Truck Ins. Exch. v. Marks Rentals*, 288 Md. 428, 433, 418 A.2d 1187 (1980), language which is merely general in nature or imprecisely defined is not necessarily ambiguous. We do not find the word "disease" to be ambiguous in the context of this case. For this reason, and because there is no dispute of fact here, *see Pacific Indem., supra*, 302 Md. at 389, 488 A.2d 486, we conclude that interpretation is properly the function of the court rather than the jury.

Aided by the definitions of ordinary meanings suggested by others, we conclude that hemophilia is a "disease" within the commonly accepted meaning of that word, and therefore within the meaning of this insurance policy. We must conclude that the insured's death resulted from medical treatment for a disease, and that consequently there is no coverage under this policy.

*JUDGMENT AFFIRMED. COSTS TO BE PAID BY PETITIONER.*