**G.E. TIGNALL & CO., INC.,**

v.

**RELIANCE NATIONAL INSURANCE CO.**

Civil No. CCB–99–3322.

United States District Court, D. Maryland.

May 22, 2000.

William M. Huddles, Huddles & Jones, P.C., Columbia, MD, for Plaintiff.

Stephen Anthony Fennell, Steptoe & Johnson, LLP, Washington, DC, John Frederick O'Connor, Jr., Washington, DC, for Defendant.

### MEMORANDUM

BLAKE, District Judge.

Plaintiff G.E. Tignall & Company, Incorporated ("Tignall") filed this declaratory judgment action against Reliance National Insurance Company ("Reliance"), seeking a declaration that Reliance owes Tignall both a defense and indemnification arising from a tort suit filed against Tignall in Baltimore City Circuit Court. Tignall filed a motion for summary judgment; Reliance responded with a cross-motion for summary judgment. A few months later, Reliance filed an additional motion for summary judgment, based on the "schools exclusion" contained in the insurance policy. The issues have been fully briefed, and a hearing on all motions was held before the court on June 1, 2000. For the reasons articulated below, Reliance's cross-motion for summary judgment will be granted, Tignall's motion for summary judgment will be denied, and Reliance's motion for summary judgment based on the schools exclusion will be dismissed as moot.

### BACKGROUND

This case, and the underlying tort suit, arise from work done at a school known as the Harford–Fairmount Institute located in Baltimore, Maryland. Tignall served as the general contractor for the renovation of the school. (Pl.'s Mem. Supp. Mot. Summ. J. at 2) In August 1996, Tignall began renovations; the work included demolition in areas where the walls and ceiling apparently contained lead paint that was peeling and flaking off of the surfaces. (*Id.*) On October 23, 1996, the City issued a stop work notice due to lead paint. (Def.'s Opp'n & Mem. Supp. Cross–Mot. Summ. J. Ex. 6)

In November 1996, Hudak's Asbestos Removal, Inc. ("Hudak") responded to Tignall's request for a time and material price to abate the lead paint on the ceilings and the walls necessary to complete the renovation. Tignall required Hudak to procure and maintain liability insurance related to lead abatement at the school.[1] As requested, Hudak submitted a Certificate of Insurance to Tignall which showed Hudak's various policies. (Pl.'s Mem. Supp. Mot. Summ. J. Ex. C) This document identified Tignall as the certificate holder and stated that Tignall was an additional insured for liability incurred because of the lead abatement work at the school. The certificate was issued by HMS Insurance Associates, an independent broker which had obtained the policies for Hudak.

Dispute exists as to when Hudak began lead abatement activities at the school. Tignall alleges that on November 11, 1996, Mr. Hudak and his foreman met with Tignall's foreman at the job site. (*Id.* Ex. A; Ex. H) The next day, Hudak allegedly examined and surveyed the site, disturbing, among other things, the ceiling, and causing lead paint chips and lead dust to become airborne. (*Id.* Ex. B; Ex. H) Tig-

---

**1.** This requirement is contained in a letter from Tignall to Hudak dated November 12, 1996 (Pl.'s Surreply Ex. 1); the December 2, 1996 one-page contract between Tignall and Hudak contains no reference to liability insurance (Def.'s Reply Ex. 1).

nall also alleges that Hudak began moving equipment into the school the week of November 25, 1996, again causing lead paint and lead dust to become airborne. (*Id.* Ex. H)

Reliance disputes this time line, claiming instead that Hudak did not begin operations at the school until December 2, 1996.[2] (Def.'s Opp'n & Mem. Supp. Cross–Mot. Summ. J. Ex. 5) In support of its version, Reliance proffers a letter, authored by the President of Tignall, which states that Hudak began abatement on December 2, 1996. (*Id.* Ex. 6)

On July 14, 1999, Kenneth Hines and his mother, Renalda Hines, filed suit against several entities in the Circuit Court for Baltimore City, alleging lead poisoning during the period of September through November 1996 at the school. Tignall is a named defendant; Hudak is not. (*Id.* Ex. 4)

On August 4, 1999, Tignall notified Reliance of the Hines lawsuit and tendered defense to Reliance. (Pl.'s Mem. Supp. Summ. J. Ex. E) On August 26, 1999, Reliance informed Tignall that Reliance's responsibility to defend applied only where Hudak's own operations were alleged as the basis of liability. (*Id.* Ex. F) Reliance enclosed a copy of the additional insured endorsement attached to the Hudak policy. (*Id.* Ex. G)

Tignall originally filed suit in state court; the case was removed to this court on November 2, 1999.

### STANDARD OF REVIEW

Rule 56(c)of the Federal Rules of Civil Procedure provides that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admis-

sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in her favor. *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 196 (4th Cir.1997) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). The non-moving party may not rest upon mere allegations or denials in her pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir.1991). The "mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### ANALYSIS

A. Certificate of Insurance

Tignall's first argument in support of its motion for summary judgment is that as a matter of law, "Reliance has a duty to defend and indemnify Tignall in the underlying tort suit because the certificate of insurance issued by Reliance creates liability insurance for Tignall's own alleged negligent acts for lead abatement work at the Project." (Pl.'s Mem. Supp. Summ. J. at 5) Tignall claims this duty arises from the

---

**2.** In the affidavit submitted by Phillip Bosnick, Hudak's foreman for the Harford–Fairmount Institute project, Mr. Bosnick does acknowledge that he attended a meeting at the job site in November 1996 and conducted a walk-through with representatives of another company. He contends, however, that Hudak did not remove any ceiling tiles and did not deliver any equipment to the site until December 2, 1996, the date Hudak commenced lead abatement work. (Def.'s Opp'n & Mem. Supp. Cross–Mot. Summ. J. Ex. 5) It is not necessary to resolve this factual dispute.

Certificate of Insurance submitted by HMS to Tignall in response to Tignall's requirement that it be included as an additional insured on Hudak's insurance policies. Tignall highlights that portion of the certificate which states:

Re; Harford Fairmount Institute School # 456 Located in Baltimore City. Lead abatement in basement, 1st, 2nd, & 3rd floor. G E Tignall & Company Inc. is included as additional insured with respect to liability.

(*Id.* Ex. C) According to Tignall, this language created a legal duty on the part of Reliance to provide a defense and indemnification for any actions resulting from Tignall's own negligence.

To support its interpretation, Tignall cites two New York cases, neither of which the court finds persuasive. In *Long Island Lighting Co. v. American Employers Ins. Co.*, 131 A.D.2d 733, 517 N.Y.S.2d 44 (App.Div.1987), the court held language in an insurance policy which obligated the insurer to indemnify the plaintiff for "any claim" for personal injury related to utility poles was enforceable, "regardless of whether or not the reason for which the plaintiffs are held liable is their own negligence or that of Cablevision." *Id.* at 46. In *Roblee v. Corning Community College*, 134 A.D.2d 803, 521 N.Y.S.2d 861 (App. Div.1987), the court did not have to determine the applicability of coverage, because the subcontractor failed to include the contractor as an additional insured. In its discussion of liability of the sub for breach of contract, however, the court observed, "There is simply no warrant in the contract language or elsewhere for the interpretation ... that the coverage intended was limited to the college's liability for the negligent acts of [the sub]." *Id.* at 863. Neither case directly addresses the situation at issue here.

Reliance rejects Tignall's version of the facts. According to Reliance, and as appears on the face of the Certificate of Insurance, HMS Insurance Associates issued the Certificate of Insurance on October 4, 1996. The following disclaimers also appear on the document's face:

This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below.

. . . . .

This is to certify that the policies of insurance listed below have been issued to the insured named above for the policy period indicated. Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions, and conditions of such policies. Limits shown may have been reduced by paid claims.

(Pl.'s Mem. Supp. Summ. J. Ex. C)

■ At the hearing on June 1, 2000, counsel agreed that HMS is an independent agency which places policies with appropriate companies. Accordingly, under Maryland law, as HMS is an insurance broker who is not employed by any single insurer, it is "if anything ... an agent of the insured, not the insurer." *Green v. H & R Block, Inc.*, 355 Md. 488, 735 A.2d 1039, 1054 (Md.1999) (discussing *American Cas. Co. v. Ricas*, 179 Md. 627, 22 A.2d 484, 487 (Md.1941)). Therefore, any reference on the certificate to Tignall's status as an "additional insured" would not be binding on Reliance. In *Progressive Cas. Ins. Co. v. Yodice*, 180 Misc.2d 863, 694 N.Y.S.2d 281 (Sup.Ct.1999), an insurance broker issued a certificate of insurance containing the same disclaimer as above. The court held that this document, which described a certain piece of equipment as insured, was not binding on the insurer, as the broker is the agent of the insured, not the insurer. *Id.* at 284.[3]

---

**3.** Tignall's argument, raised at the motions

hearing, that the certificate language circum-

▮ Ordinarily, the presentation of a certificate alone does not create coverage or legal duties. In *Erie Ins. Exchange v. Gosnell*, 246 Md. 724, 230 A.2d 467 (Md. 1967), the Court of Appeals, faced with conflicting provisions of a statutorily required certification of coverage and the terms of the policy, held that the terms of the policy control. *Id.* at 470. In considering a certificate of insurance with disclaimers similar to the ones at issue here, the Fourth Circuit held that the party seeking additional insured status could not rely on the certificate as "independent evidence" of coverage. *American Hardware Mut. Ins. Co. v. BIM, Inc.*, 885 F.2d 132, 139–40 (4th Cir.1989) (citing 13A Appleman, *Insurance Law and Practice* § 7530, at 19 (rev. ed. 1985 & Supp.1987) for the proposition that "a certificate of insurance is not a contract of insurance but is merely the evidence that a contract has been issued"). *See also Tidewater Equipment Co. v. Reliance Ins. Co.*, 650 F.2d 503, 506 (4th Cir.1981) (holding that plaintiff did not meet burden of proving the existence of an insurance contract when it only placed the certificate of insurance, which contained disclaimers similar to the ones at issue here, into evidence); Def.'s Opp'n & Mem. Supp. Cross–Mot. Summ. J. at 9 n. 4 (listing cases from other jurisdictions). As the Certificate of Insurance issued by HMS is not binding on Reliance, and the language of the disclaimer is clear, Tignall's argument that the certificate creates a duty on the part of Reliance to provide a defense and indemnification for Tignall's own negligence must fail.

Tignall's related argument that the language of the additional insured endorsement must be disregarded because it was not disclosed to Tignall is similarly without merit. Reliance had no affirmative duty to disclose the insurance terms to Tignall, as it was not in a contractual relationship with Tignall. Accordingly, the provisions

in the insurance contract between Reliance and Hudak govern.

**B. Insurance Contract Between Reliance and Hudak**

Tignall's second argument in support of its motion for summary judgment is "[a]s a matter of law, Reliance has a duty to defend and indemnify Tignall even assuming the undisclosed endorsement applies, because, under Maryland law, the endorsement is ambiguous and any ambiguity must be construed against the drafter, Reliance." (Pl.'s Mem. Supp. Summ. J. at 5)

▮ "Under Maryland law, when deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself." *Kendall v. Nationwide Ins. Co.*, 348 Md. 157, 702 A.2d 767, 771 (Md.1997) (internal quotation marks omitted) (quoting *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 625 A.2d 1021, 1031 (Md.1993)). Maryland courts do not apply the rule common in many states that insurance policies should be interpreted most strictly against the insurer. *Id.* (quoting *Cheney v. Bell Nat. Life Ins. Co.*, 315 Md. 761, 556 A.2d 1135, 1138 (Md.1989)). Rather, courts follow the rule applicable to contracts generally that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole. *Id.* (quoting *Cheney*, 556 A.2d at 1138 ). To ascertain the parties' intentions, the court should analyze the plain language of the contract, "according words and phrases their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean." *Id.* A term is deemed ambiguous if it suggests more than one meaning to a reasonably prudent layperson. *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 667 A.2d 617, 619 (Md.1995). Only if the term is ambiguous is parol or

scribing the creation of additional rights is limited only to the "mere certificate holder," is neither supported by the language of the

certificate or helpful to Tignall, because it is listed as the certificate holder on the face of the document.

extrinsic evidence admissible to illustrate the intent of the parties. *Id.*

### 1. Is Tignall an Additional Insured?

Whether Tignall is an additional insured under Hudak's insurance policy must be answered by examining the terms of the policy itself. The policy issued by Reliance to Hudak includes an endorsement that governs the extent to which the policy provides coverage for additional insureds. The Additional Insured Endorsement states:

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

(Def.'s Opp'n & Mem. Supp. Cross–Mot. Summ. J. Ex. 2) The Schedule referred to in the Endorsement indicates the following entities may qualify for additional insured coverage under the policy:

All facility owners, general contractors, or real estate managers as required by contract and as evidenced by a certificate of insurance on file with the company.

(*Id.*) While the parties dispute whether the prerequisites of a contractual requirement and placing the certificate on file with Reliance have been met, the court will assume, *arguendo,* that they have.

### 2. Liability "arising out of"

Even assuming that Tignall is an additional insured under Hudak's policy, vigorous disagreement exists regarding the scope of the coverage. Tignall argues that Reliance owes it a defense and indemnification for suits alleging negligence on the part of Tignall; Reliance counters that coverage exists only to the extent that Tignall incurs liability arising out of Hudak's ongoing operations performed for Tignall.

Tignall contends that the definition of "who is an insured" is ambiguous, and therefore should be construed against the drafter. (Pl.'s Mem. Supp. Summ. J. at 7–8) To support this claim, Tignall cites *Heat & Power Corp. v. Air Products & Chemicals, Inc.,* 320 Md. 584, 578 A.2d 1202 (Md.1990). In that case, the Court of Appeals examined an endorsement which provided:

[T]he "person's insured" provision is amended to include as insureds [Owner]. The provisions of this endorsement apply only in connection with work performed by the named insured for [Owner}].

*Id.* at 1208. Both parties contended that the language was unambiguous, but they differed as to how it should be interpreted. The owner of the property argued that the endorsement provided it with complete liability coverage for all negligent acts committed on the construction site, while the insurer contended that coverage extended only to negligent acts of the contractor or its agents. *Id.* The court disagreed with both parties, finding the endorsement ambiguous and reversing the grant of summary judgment, in order that factual findings regarding the intentions of the parties could be made. *Id.* at 1209.

■ Tignall suggests that, like the endorsement in *Heat & Power,* the provision at issue here is ambiguous, and therefore Tignall's intentions—that it be covered for its own negligence—should dictate the result. (Pl.'s Mem. Supp. Summ. J. at 8) Tignall cites *Truck Ins. Exchange v. Marks Rentals, Inc.,* 288 Md. 428, 418 A.2d 1187, 1191 (Md.1980), which merely states the settled law in Maryland, that, "absent evidence indicating the intention of the parties," an ambiguous provision should be interpreted against the drafter of the contract, in this case, Reliance.

Reliance persuasively distinguishes *Heat & Power,* observing that the terms of the policy in that case, which provided coverage "in connection with work performed by the named insured," as well as the fact that the underlying action was brought by an employee of the named insured, raised

ambiguity regarding the coverage that is simply not present in this case.

Reliance argues that if Tignall is covered at all by the Reliance–Hudak policy, the language of the endorsement limits the coverage to "those instances where the additional insured is held vicariously liable for the named insured's actions." (Def.'s Opp'n & Mem. Supp. Cross–Mot. Summ. J. at 12) Reliance cites *Baltimore Gas & Elec. v. Commercial Union Ins. Co.*, 113 Md.App. 540, 688 A.2d 496, 503 (Md.App. 1997) in support of this proposition. In that case, the named insured (Ferguson) entered into a contract whereby it agreed to perform excavation services for BG & E. Under the contract, Ferguson agreed to add BG & E to its general liability policy as an "additional insured"; the contract characterized the required insurance coverage as follows:

> Such insurance as afforded by this policy for the benefit of BGE shall be primary as respects any claims, losses, damages, expenses, or liabilities arising out of work or services for BGE, and insured hereunder. . . .

*Id.* at 504 (describing the coverage as "for potential claims by third parties that were based on work by Ferguson for BGE" and noting that the contract did not require Ferguson to provide coverage for claims brought against BGE based on BGE's own negligence). BG & E was subsequently sued for personal injuries as a result of the project; Ferguson's insurance company, Commercial Union, refused to defend or indemnify BG & E. BG & E then sued both Commercial Union and Ferguson, seeking a declaratory judgment that Commercial Union had a duty to defend BG & E or, in the alternative, that Ferguson had breached its contractual duty to provide insurance for BG & E with respect to the project.

On appeal, the Court of Special Appeals examined the language in the insurance contract, which stated that BG & E was protected only with respect to liability arising out of:

A. "Your work" [Ferguson's] for the additional insured(s) at the location designated above, or

B. Acts or omissions of the additional insured(s) in connection with their general supervision of "your work" at the location shown in the Schedule.

*Id.* The policy defined "Your work" as:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

*Id.* Again, the Court of Special Appeals characterized the policy as providing BG & E with coverage for claims brought against it based on Ferguson's work for BG & E as well as for claims stemming from BG & E's acts or omissions in supervising Ferguson. The court rejected any suggestion that coverage extended to liabilities arising from work performed by BG & E. *Id.* at 505. Therefore, once the plaintiffs in the underlying action amended their complaint to one count based on BG & E's sole negligence, Commercial Union had no duty to defend. *Id.* at 510–11.

■ The court agrees with Reliance's argument that the coverage provided to an additional insured under the Reliance–Hudak policy, namely, for liability arising out of Hudak's ongoing operations performed for Tignall, is indistinguishable from Section (A) of the provision in *BG & E*. Accordingly, Hudak's policy limiting additional insured coverage to liability arising out of the named insured's work does not cover Tignall for its own negligent acts. Reliance owes no duty to defend or indemnify Tignall for acts arising out of its own negligence.

**C. Duty to Defend**

■ Tignall's final argument is that, even if coverage is not provided for Tignall's own negligence, partial summary judgment requiring Reliance to defend Tignall is appropriate because "Hudak personnel distributed and removed lead

paint, flakes, chips and dust, as alleged to have caused the injury in the underlying tort action during November 1996." (Pl.'s Mem. Supp. Summ. J. at 5) In Maryland, the insurer's duty to defend arises "when there exists a 'potentiality that the claim could be covered by the policy.'" *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 695 A.2d 566, 570 (Md.1997) (quoting *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842, 850 (Md.1975)). "A potentiality of coverage is typically established by the allegations in the tort plaintiff's complaint." *Id.* Extrinsic evidence may be used by the insured to establish the potentiality of coverage. *Id.*

Tignall argues that the allegations in the underlying complaint raise the potential for coverage, as the complaint alleges that the plaintiff's injuries were caused by renovations including "lead paint removal, exposing the children to flaking and chipping lead paint and lead paint dust." (Pl.'s Mem. Supp. Summ. J. Ex. D at 8) Additionally, plaintiffs allege that as a result of "the ingestion, consumption and inhalation by the infant plaintiff, of the paint and dust in the building, the infant plaintiff contracted and was caused to suffer lead poisoning." (*Id.* Ex. D at 9)

 The court holds, however, that no potentiality for coverage exists, as the underlying lawsuit neither mentions Hudak [4] nor affirmatively pleads a case of vicarious liability. In addition to not naming or mentioning Hudak, the Hines complaint states: "The infant Plaintiff avers that all of these damages were and are due solely to the wrongful and negligent acts and omissions of the Defendants." (*Id.* Ex. D at 6) Under Maryland law, a plaintiff pursuing a theory of vicarious liability must affirmatively plead such an action. *See Fearnow v. Chesapeake & Potomac Tel. Co.*, 104 Md.App. 1, 655 A.2d 1, 23 (Md.App.1995) ("[S]cope of employment is recognized as a fundamental element of a respondeat superior claim that must be affirmatively plead and proved by the plaintiff."), *aff'd in part, rev'd in part*, 342 Md. 363, 676 A.2d 65 (Md.1996). The plaintiff in the underlying tort suit did not allege nor plead a theory of vicarious liability; for all the above reasons, no potential for liability exists. Accordingly, Reliance does not owe Tignall a defense. Tignall's motion for summary judgment will be denied; Reliance's cross-motion for summary judgment will be granted.

**D. Schools Exclusion**

In April 2000, Reliance filed another motion for summary judgment based upon the "schools exclusion" contained in the Reliance–Hudak insurance policy, claiming that even if Tignall were entitled to additional insured coverage, the exclusion specifically precludes coverage. Because of the holding above, the court need not reach this question. Reliance's motion for summary judgment based on the schools exclusion will be dismissed as moot.

4. To avoid Reliance's argument that Hudak is not mentioned in the complaint, Tignall claims that language alleging the named defendants renovated the school "by use of agents, servants, and/or employees" includes Hudak. A subcontractor, however, with the right to control his own work, is not the "agent" of the general contractor. *See Brady v. Ralph Parsons Co.*, 308 Md. 486, 520 A.2d 717, 730 n. 26 (Md.1987) ("A person who contracts to accomplish something for another or to deliver something to another, but who is not acting as a fiduciary for the other is a non-agent independent contractor."). Such

is the case here: as of December 2, 1996, Hudak and Tignall agreed that for a stipulated price, Hudak would perform lead abatement services at the school.

Tignall disputes this characterization of the law regarding agents and subcontractors by pointing to the *BG & E* case, in which potential for coverage existed when the complaint alleged that the Defendant corporations, by their "agents, servants or employees," acted negligently. *BG & E*, 688 A.2d at 506. In that case, however, the named insured was also a named defendant.