Dear Honorable John C. Astle
You have requested our opinion whether a member of a health maintenance organization ("HMO") may enter into a private contract with a health care provider with no relation to the HMO and whether the statutory prohibition against balance billing of HMO members would apply to such a contract.
In our opinion, an HMO member may contract with a health care provider for health care services that are not covered by the member's HMO. As part of that private contract, the member may agree not to rely on the HMO plan and to pay the provider's full rate for services. If the HMO member makes an informed and voluntary decision to enter into such a contract, the prohibition against balance billing of HMO members does not apply.
 I Prohibition Against Balance Billing of HMO Members
The State HMO law is set forth in Annotated Code of Maryland, Health-General Article ("HG"), § 19-701 et seq. Under the basic concept of an HMO, a member pays a periodic fee to the HMO and, apart from co-payments or deductibles set forth in the plan, generally has no further financial obligation for health services covered by the HMO plan. See Riemer v. Columbia Medical Plan, Inc., 358 Md. 222, 228-33,747 A.2d 677 (2000). Thus, the Court of Appeals has held that an HMO may not pursue a member for subrogation, restitution, or reimbursement after the member has benefitted from a settlement with a third party tortfeasor.[1] Id. at 242 (applying HG § 19-701(f)(3)).
Likewise, the State HMO law also prohibits providers[2] from attempting to collect amounts from HMO members beyond the periodic fee and any deductible or copayments. In particular, it states:
 (p)(1) Except [for copayments and coinsurance] individual enrollees and subscribers of health maintenance organizations . . . shall not be liable to any health care provider for any covered services provided to the enrollee or subscriber.
 (2)(i) A health care provider . . . may not collect or attempt to collect from any subscriber or enrollee any money owed to the health care provider by a health maintenance organization. . . .
 (ii) A health care provider . . . may not maintain any action against any subscriber or enrollee to collect or attempt to collect any money owed to the health care provider by a health maintenance organization. . . .
HG § 19-710(p) (emphasis added). See also HG § 19-710(i) (contracts between HMOs and providers must include "hold harmless" provision barring provider from seeking additional payments from HMO members).
A prior opinion of this Office recounted the history and general application of this prohibition against the balance billing of HMO members. 83 Opinions of the Attorney General ___ (1998) [Opinion No. 98-018 (September 28, 1998)] ("1998 Opinion").[3] The 1998 Opinion concluded that "[e]xcept in the case of a point-of-service HMO policy, a non-contracting provider who provides a covered service to an HMO member may not balance bill the member." 1998 Opinion at p. 2. Similarly, the Court of Appeals recently described the combined effect of the "hold harmless" provision and the balance billing prohibition in the HMO law: "These sections explicitly provide that subscribers or members owe no debt to any health care provider (i.e., any doctor, hospital, etc.) for any covered services." Riemer, 358 Md. at 244 (emphasis added). Thus, critical to the application of the balance billing prohibition is a determination whether the service provided to the HMO member is a "covered service."
While the State HMO law restricts a provider's recourse against an HMO member, on the other hand, it also requires that the member's HMO compensate non-contracting providers who serve HMO members with the plan's authorization. HG § 19-710.1. That law provides ground rules for computing the amount of compensation.[4] In that context, the General Assembly has provided a very specific definition of "covered service." That statute defines "covered service" as follows:
 (3) "Covered service" means a health care service included in the benefit package of the health maintenance organization and rendered to an enrollee of the health maintenance organization by a health care provider, including a physician or hospital, not under written contract with the health maintenance organization:
 (i) Pursuant to a verbal or written referral by the enrollee's health maintenance organization or by a provider under written contract with the enrollee's health maintenance organization; or
 (ii) That has been preauthorized or otherwise approved either verbally or in writing by the enrollee's health maintenance organization or a provider under written contract with the enrollee's health maintenance organization.
HG § 19-710.1(a)(3). If the service provided to the patient falls within this category, the non-contracting provider may obtain compensation from the HMO as provided in HG § 19-710.1. However, in such circumstances, there is no exception from the general prohibition against balance billing in HG § 19-710(p) that would permit the non-contracting provider to balance bill the HMO member. 1998 Opinion at p. 6.[5]
 II Private Contracts Between HMO Members and Health Care Providers
Your questions are based on the following hypothetical situation:
 An HMO member voluntarily seeks health care services from a licensed health care provider who has not contracted with the HMO to provide services to the HMO's members.
 The services sought by the HMO member would be covered under the terms of the member's HMO contract if accessed through the HMO. However, the member was not referred to the provider by the HMO or by a provider under contract with the HMO. Nor has the HMO or its agent pre-authorized or otherwise approved the provision of these services.
 The HMO member knows that the provider is not under contract with the HMO. The member represents to the provider in writing that the member will be responsible for the provider's charges and either (1) that he or she is not an HMO member or (2) that he or she will not use HMO coverage for the services rendered.
 The provider performs the health care services sought by the HMO member and then bills the HMO member at the provider's rate for those services.
A. Private Contracting Generally
 In the context of this scenario, you ask the following two questions:
 • May the HMO member enter into a private contract with the provider?
 • May the provider bill the HMO member at provider's full rate for the services rendered?
The HMO law does not prohibit an HMO member from entering into a private contract with a health care provider outside of the context of the HMO. If the patient has deliberately chosen to obtain the provider's services without utilizing his or her HMO coverage and with the knowledge and intent that he or she will be liable to pay the full cost of those services, then HG § 19-710(p) would not bar the provider from collecting the provider's full rate.
The balance billing prohibition in the State HMO law applies only to the provision of "covered services." Even though the particular service provided in this scenario is included in the HMO's benefit package, the member was not referred to the non-contracting provider by the HMO or its agent. Nor did the HMO preauthorize or otherwise approve the provision of the services to its member. Thus, the hypothetical situation that you describe does not involve a "covered service" within the meaning of HG § 19-710.1(a)(3).
Since the service provided does not satisfy the statutory definition of "covered service," the provider would have no right under the HMO law to obtain payment from the HMO and, consequently, would not be barred from billing the patient. As our 1998 Opinion concluded: "All . . . non-contracting providers may directly bill an HMO member for a non-covered service." 1998 Opinion at p. 12.
It is vital, however, that the patient's intent not to access the provider through the HMO and the patient's knowledge of the consequences of that decision be adequately documented at the time that the patient and provider enter into a private contract. The Court of Appeals has noted that the primary purpose of the prohibition against balance billing is "consumer protection." Riemer, 358 Md. at 245. Because the HMO member is essentially foregoing a statutory right not to be balance billed by a health care provider for that service, the member's assent must be informed, voluntary, and specific. Cf. 63 Opinions of the AttorneyGeneral 432, 437 (1978). The written document mentioned in your hypothetical situation should clearly and concisely inform the member of the financial consequences of entering into a private contract outside the context of the HMO — i.e., that the member will be solely responsible for the provider's charges, that the HMO will not pay the provider, that the provider will not accept payment from the HMO, and that the member's obligation to pay HMO premiums will not be affected.
B. Distinguishing Deception from Confusion
 You add the following facts to your hypothetical situation:
 The HMO member, contrary to the initial representation to the provider, sends the provider's bill to the HMO for payment. The HMO reimburses the patient for a portion of the provider's bill or sends that portion directly to the provider.
You then ask:
 • May the provider collect or retain the balance of the provider's full rate from the patient?
The answer to your question depends in part on two critical facts: (1) why the patient sent the bill to the HMO and (2) why the HMO paid it. This scenario highlights the importance of clearly documenting the formation and terms of a private contract between a patient and provider, as it is important to distinguish deception from confusion.
If a private contract between the patient and provider was clearly formed and documented, as outlined in the previous section, the provider would not be prohibited from collecting the full amount of its charge from the patient. However, the HMO apparently paid the provider on the premise that its member accessed the provider's services pursuant to the plan.[6] In that case, this scenario suggests that the patient has deceived the HMO. (To avoid the appearance that the provider is a partner in the patient's deception, the provider's billing statement could indicate that it is issued as part of a private contract and is not eligible for reimbursement by an HMO.) If the HMO sends the payment to the provider, presumably the provider will not accept the payment, since the HMO is not a party to the private contract between the provider and the member. If the HMO happens to send payment to the member, the HMO may recover the payment from the patient as it is the patient's responsibility. See HG § 19-710.1(c).
If a private contract is not adequately documented and the HMO member did not intend to forswear any reliance on HMO coverage, then the parties never truly entered into a private contract.[7] There may be circumstances in which a patient has consistently sought coverage of the services by the HMO, but has not obtained authorization at the time services are provided. For example, an HMO may initially deny coverage of services by an out-of-network provider, but later authorize such coverage after the member has pursued the statutory grievance process. See Annotated Code of Maryland, Insurance Article, § 15-10A-01 et seq. If the HMO ultimately pays the bill because it authorizes the treatment, albeit after the fact, then the service provided would fit the definition of "covered service" and the balance billing prohibition of HG § 19-710(p) would prohibit the provider from collecting or retaining the balance of the provider's full rate.
 III Conclusion
In summary, an HMO member may contract with a health care provider outside the context of HMO coverage and may, in that contract, agree to pay the provider's full rate for services without regard to the statutory prohibition against balance billing of HMO members. However, the HMO member's decision to enter into such a contract must be informed, voluntary, and well documented.
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] The General Assembly recently amended the HMO law to allow an HMO to be subrogated to certain causes of action of its subscribers. Chapter 569, Laws of Maryland 2000.
[2] For purposes of this opinion, we assume that the provider is a Maryland licensee. The balance billing prohibition in HG § 19-710(p) will not apply to some out-of-state providers who are not under contract with a Maryland-licensed HMO and do not otherwise have the minimum contacts with Maryland that permit application of Maryland law to the provider. See 83 Opinions of the Attorney General ___ (1998) [Opinion No. 98-018 (September 28, 1998)], slip op. at pp. 8-12.
[3] At the time of the 1998 Opinion, the prohibition against balance billing was codified as HG § 19-710(o). Legislation enacted during the 2000 session of the General Assembly resulted in the new designation. See Chapter 331, Laws of Maryland 2000.
[4] This provision requires the HMO to pay the non-contracting provider within 30 days of receipt of the claim and establishes benchmarks for determining the amount owed by the HMO to the non-contracting provider for the service. HG § 19-710.1(b). The HMO may also seek reimbursement from the member to the extent that the HMO determines that the bill is the responsibility of the member. HG § 19-710.1(c).
[5] Medical services obtained from a non-contracting provider under a "point-of-service" HMO plan are considered "covered services" as they are authorized by the plan. 1998 opinion at p. 7 n. 2. The plan governs division of responsibility for payment between the HMO and the member. Id. at p. 7 n. 3; HG § 19-710.2. In addition, services provided by non-contracting providers to HMO members in emergencies may also be treated as covered services for purposes of the balance billing prohibition. See HG § 19-712.5.
[6] If the HMO chooses for some reason to make payment to the patient even after being informed that the services were rendered pursuant to a private contract between provider and patient, in our view, the balance billing prohibition would not pertain.
[7] In this regard, a form prepared by the provider must be clear and unambiguous as it may be construed against the party who drafted it. See Truck Insurance Exchange v. Marks Rentals, Inc., 288 Md. 428, 435 (1980) ("where one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against that party"); Restatement 2d Contracts § 206; G.E. Tignall Co., Inc. v. Reliance National Ins. Co.,102 F. Supp.2d 300, 305 (D.Md. 2000).
 *Page 338