PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1239

CAPITAL CITY REAL ESTATE, LLC,

             Plaintiff - Appellant,

      v.

CERTAIN UNDERWRITERS AT LLOYD'S LONDON, Subscribing to
Policy Number:  ARTE018240,

             Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    Marvin J.  Garbis, Senior District
Judge.  (1:13-cv-01384-MJG)

Argued:  January 29, 2015          Decided:  June 10, 2015

Before WILKINSON, GREGORY, and SHEDD, Circuit Judges.

Vacated and remanded with instructions by published opinion.
Judge Gregory wrote the opinion, in which Judge Wilkinson and
Judge Shedd joined.

**ARGUED:** Robert Lawrence Ferguson, Jr., FERGUSON, SCHETELICH
& BALLEW, PA, Baltimore, Maryland, for Appellant.  Georgia S.
Foerstner, CLARK & FOX, Cherry Hill, New Jersey, for Appellee.
**ON BRIEF:** Ann D. Ware, FERGUSON, SCHETELICH & BALLEW, PA,
Baltimore, Maryland, for Appellant.  John M. Clark, CLARK & FOX,
Cherry Hill, New Jersey, for Appellee.

GREGORY, Circuit Judge:

Capital City Real Estate, LLC ("Capital City") initiated this declaratory judgment action in the District of Maryland, seeking a declaration that Certain Underwriters at Lloyd's London ("Underwriters") were obligated to defend and indemnify Capital City against a negligence lawsuit filed in the Superior Court for the District of Columbia. The district court granted summary judgment in favor of the Underwriters, concluding that it had no duty to defend or indemnify Capital City. Because the district court erred in granting summary judgment to the Underwriters, we vacate and remand.

**I.**

Central to this dispute is the common wall shared by the structures located at 55 Bryant Street, NW, Washington, DC ("55 Bryant Street") and 57 Bryant Street, NW, Washington, DC ("57 Bryant Street"). 55 Bryant Street was owned by Leon Yates ("Yates") and insured by The Standard Fire Insurance Company ("Standard Fire"). Capital City, a real estate development company with its principal place of business in Washington, DC, was operating as the general contractor for the renovation of 57 Bryant Street in 2008 and 2009.

Capital City subcontracted the foundation, structural, and underpinning work for the 57 Bryant Street renovations to

2

Marquez Brick Work, Inc. ("Marquez"), a "corporation engaged in the business of concrete, bricks, blocks, and foundation work with its principal place of business located in Maryland." J.A. 268. "The subcontract between Capital City and Marquez Brick required Marquez Brick to indemnify Capital City for damages caused by its [Marquez's] work and further required Marquez Brick to maintain certain general liability insurance naming Capital City as an additional insured." J.A. 269. Accordingly, on November 17, 2008, the Underwriters issued an insurance policy (the "Policy") to Marquez, effective from November 17, 2008, through November 17, 2009. In December 2008, the Underwriters also issued an Endorsement (the "Endorsement") to the Policy listing Capital City as an additional insured party on the Policy. As relevant to this case, the Endorsement amends the Policy to cover Capital City as an additional insured,

> but only with respect to liability for . . . "property damage" . . . caused in whole or in part by:
>
> 1. [Marquez's] acts or omissions; or
>
> 2. The acts or omissions of those acting on [Marquez's] behalf;
>
> in the performance of [Marquez's] ongoing operations for [Capital City in Washington, D.C.].

J.A. 109.

On June 9, 2009, during the course of Marquez's work on the underpinning of 57 Bryant Street, the common wall shared by 57 Bryant Street and 55 Bryant Street collapsed. Capital City's

3

insurer sent a letter to the Underwriters notifying them of the collapse, and tendering to the Underwriters "all claims that are being or will be asserted by Mr. Yates and/or others" as a result of the incident. J.A. 161. No response was received to either the initial letter, or to several letters and emails subsequently sent by counsel for Capital City.

On June 7, 2012, Standard Fire, as subrogee, filed suit against 57 Bryant Street, NW Limited Partnership, Bryant St., LLC, and Capital City in the Superior Court for the District of Columbia. Standard Fire alleges in its complaint (the "underlying complaint") that Capital City applied for and obtained from the District of Columbia a building permit to perform renovations at 57 Bryant Street. Standard Fire further alleges that "[t]he plan submitted to the District of Columbia did not detail the excavation details or any plans for providing any underpinning support or other support to the common walls and other structures of the premises." J.A. 80. The underlying complaint does not mention Marquez or explicitly seek any damages for any of its acts or omissions. Rather, the complaint attributes the June 9, 2009 collapse and resulting damage to 55 Bryant Street to negligence on the part of the named defendants. J.A. 81 ("The failure of the Defendants to properly excavate and support the structure located at 57 Bryant Street . . . constitutes negligence in that they failed to comply with the

4

applicable standard of care while performing said renovations."). Standard Fire paid for the repairs per its insurance policy with Yates, and requested $600,000 in damages, plus attorney's fees, costs, and interest.

Capital City responded in part by filing a third party complaint against both Marquez and its owner, Feliciano Marquez. Capital City alleges that its contract with Marquez requires Marquez "to pay for defending and indemnify [Capital City] against all claims for liability that were a result of or partially resulting from Marquez's breach of any term of the" contract, and also requires "that if [Capital City] is sued and the subject of the suit is [Marquez's] work or the direct or indirect result of it, [Marquez] shall indemnify [Capital City] against all liabilities" and reimburse it for any damages or fees. J.A. 89.

Thereafter, counsel for the Underwriters responded by email and indicated that the tender of claims was under review. On April 13, 2013, counsel for the Underwriters sent a letter to counsel for Capital City denying coverage.

Capital City then filed this declaratory judgment action on May 10, 2013 against the Underwriters in the District of Maryland, seeking a declaration from the court that the Underwriters have a duty to defend Capital City under the Policy. The parties filed cross-motions for summary judgment,

5

and the district court ruled in favor of the Underwriters. Capital City timely filed this appeal.

## II.

Our review of a district court's grant of summary judgment is de novo. French v. Assurance Co. of Am., 448 F.3d 693, 700 (4th Cir. 2006). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. Here, we apply Maryland law because the Policy was delivered in Maryland and this diversity action was filed in the District of Maryland. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941) (holding that a federal court exercising diversity jurisdiction applies the choice of law principles of the state where the federal court is located); Perini/Tompkins Joint Venture v. Ace Am. Ins. Co., 738 F.3d 95, 100 (4th Cir. 2013) ("In insurance contract disputes, Maryland follows the principle of lex loci contractus, which applies the law of the jurisdiction where the contract was made. For choice of law purposes, a contract is made where 'the last act is performed which makes the agreement a binding contract. Typically, this is where the policy is delivered and the premiums paid.'" (citation omitted)).

Capital City advances two arguments on appeal. First, it contends that the district court erred in concluding that the Underwriters would have a duty to defend only if the underlying complaint had alleged that Capital City was vicariously liable for the actions of its subcontractor. Second, Capital City argues that the district court should have made clear that, if the Underwriters owe it a duty to defend, then Capital City is entitled to recover expenses, including attorney's fees.

**III.**

In determining whether an insurer has a duty to defend under an insurance policy, Maryland courts apply the following test:

> (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses on the allegations of the tort suit. At times these two questions involve separate and distinct matters, and at other times they are intertwined, perhaps involving an identical issue.

St. Paul Fire & Marine Ins. Co. v. Pryseski, 438 A.2d 282, 285 (Md. 1981). We address the two steps of the test in turn.

**A.**

We first must determine the scope of coverage under the Policy's terms and conditions. Pryseski, 438 A.2d at 285. With respect to interpretation of the Policy language and terms, we

7

note that, "[u]nlike the majority of other states, Maryland does not follow the rule that insurance policies are to be most strongly construed against the insurer." Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co., 699 A.2d 482, 494 (Md. 1997). Rather, Maryland law applies ordinary contract principles to insurance contracts. Id. "Nevertheless, under the general principles of contract construction, if an insurance policy is ambiguous, it will be construed liberally in favor of the insured and against the insurer as drafter of the instrument." Id.

"If the policy's language is clear and unambiguous, the Court will assume the parties meant what they said. As with any contractual dispute, we start with the relevant policy provisions." Perini/Tompkins, 738 F.3d at 101 (quotation marks and ellipsis omitted); see also Prince George's Cnty. v. Local Gov't Ins. Trust, 879 A.2d 81, 88 (Md. 2005) ("In interpreting an insurance policy, as with any contract, the primary task of the circuit court is to apply the terms of the policy itself."). As with other contracts, "we analyze the plain language of [an insurance] contract according words and phrases their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean." Kendall v. Nationwide Ins. Co., 702 A.2d 767, 771 (Md. 1997). In so doing, we read the Endorsement and the Policy together as a single

8

contract.  Local Gov't Ins. Trust, 879 A.2d at 88 ("In general, the main insurance policy and an endorsement constitute a single insurance contract, and an effort should be made to construe them harmoniously.").  However, "[i]f the endorsement conflicts with the main policy, the endorsement controls."  Id.

Here, the relevant portion of the Policy is the Endorsement itself.  The Endorsement in this case is the form provided by the Insurance Services Office, Inc. ("ISO") which "is the almost exclusive source of support services in this country for [commercial general liability] insurance."  Hartford Fire Ins. Co. v. California, 509 U.S. 764, 772 (1993).  It "develops standard policy forms and files or lodges them with each State's insurance regulators; most [commercial general liability] insurance written in the United States is written on these forms."  Id.  The Endorsement here, the CG 20 10 07 04 Form, was copyrighted by the ISO in 2004.  J.A. 109.  It explicitly covers Capital City as an additional insured for the 57 Bryant Street renovation project, "but only with respect to liability for . . . 'property damage' . . . caused in whole or in part by: 1. [Marquez's] acts or omissions; or 2. The acts or omissions of those acting on [Marquez's] behalf."  J.A. 109.

The Maryland Court of Appeals has not construed the Endorsement language presented in this case.  However, the language is quite clear that coverage is provided for Capital

9

City, as the additional insured, for "property damage . . . caused in whole or in part by" Marquez. The Fifth Circuit has construed the exact Endorsement language at issue here to mean that an insurer has a duty to defend an additional insured "only if the underlying pleadings allege that" the named insured, "or someone acting on its behalf, proximately caused" the injury or damage. Gilbane Bldg. Co. v. Admiral Ins. Co., 664 F.3d 589, 598 (5th Cir. 2011). Insurance law commentators have also examined the language at issue and concluded that an additional insured is covered where a named insured is at least partially negligent. See, e.g., Scott C. Turner, Insurance Coverage of Construction Disputes § 42:4 (2015) (stating that when the "ISO issued revised versions of its additional insured endorsements" in 2004, it "attempt[ed] to narrow coverage for additional insureds" such that "for there to be insurance for the additional insured . . . the named insured must be negligent at least in part"). We thus conclude that the plain language of the Endorsement provides for exactly what is says: coverage to Capital City for property damage caused by Marquez, either in whole or in part.

The Underwriters argue that the scope of coverage is limited to Capital City's vicarious liability for Marquez's acts or omissions. However, there is no mention of vicarious or derivative liability in the Endorsement. As the Tenth Circuit

10

recognized in construing the language of the predecessor to the CG 20 10 07 04 Form, "if the parties had intended coverage to be limited to vicarious liability, language clearly embodying that intention was available." McIntosh v. Scottsdale Ins. Co., 992 F.2d 251, 255 (10th Cir. 1993) (original alterations omitted); see also Am. Empire Surplus Lines Ins. Co. v. Crum & Forster Specialty Ins. Co., No. Civ. H-06-0004, 2006 WL 1441854, at *7 (S.D. Tex. May 23, 2006) (construing the 2004 CG 20 10 07 04 Form and remarking that "nothing in the 'whole or in part' sentence of the Endorsement . . . expressly limits . . . additional insured coverage to derivative or vicarious claims. . . . The words 'derivative' and 'vicarious' are conspicuously absent from the Endorsement"). Turner has observed that "[m]any insurers maintain that the coverage provided to additional insured is limited to the additional insured's vicarious liability for the acts or omissions of the named insured." Turner, Insurance Coverage of Construction Disputes § 42:4. But he rightly notes that "[w]hile it is true that the additional insured is covered for its vicarious liability stemming from the named insured's operations, the insurer's attempt to limit coverage to that alone ignores the language of the additional insured endorsements." Id.

Ultimately, it is the language of the Endorsement that must control. See Perini/Tompkins, 738 F.3d at 101. Here, the

11

language of the Endorsement plainly lacks the vicarious liability limitation that the Underwriters seek to impose. Even if we were to view the Endorsement language as ambiguous, we would be obligated to construe that ambiguity against the Underwriters, see Empire Fire, 699 A.2d at 494, and to find that the scope of the Endorsement extends to property damage caused by Marquez, either in whole or in part, regardless of whether the underlying complaint seeks to hold Capital City vicariously liable for Marquez's acts or omissions.

**B.**

Having determined the scope of the Endorsement, the Court turns to the second question presented by the Pryseski test, namely whether the "allegations in the tort action potentially bring the tort claim within the policy's coverage." Pryseski, 438 A.3d at 285. As the Maryland Court of Appeals has stated, "to give effect to the duty to defend where the allegations, even if groundless, present claims both within and without the policy coverage the rule in Maryland is that 'the insurer still must defend if there is a potentiality that the claim could be covered by the policy.'" Continental Cas. Co. v. Bd. Of Educ., 489 A.2d 536, 542 (Md. 1985) (quoting Brohawn v. Transamerica Ins. Co., 347 A.2d 842, 850 (Md. 1975)); see also Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co., 688 A.2d 496, 505-06 (Md. Ct. Spec. App. 1997) (observing that the Maryland Court of

12

Appeals has held that "the duty to defend arises as long as the plaintiff in a tort case alleges an 'action that is <u>potentially covered</u> by the policy, no matter how attenuated, frivolous, or illogical that allegation may be.'" (quoting <u>Sheets v. Brethren Mut. Ins. Co.</u>, 679 A.2d 540, 543 (Md. 1996)).

Maryland courts generally look to the pleadings in the underlying lawsuit to determine whether there is a potentiality of coverage. <u>Aetna Cas. & Sur. Co. v. Cochran</u>, 651 A.2d 859, 863 (Md. 1995). While the Maryland Court of Appeals has "held that an <u>insurer</u> may not use extrinsic evidence to contest coverage if the tort suit complaint establishes a potentiality of coverage," it has set forth a different rule for an <u>insured</u>. <u>Id.</u> at 863-64. Specifically, "where a potentiality of coverage is uncertain from the allegations of a complaint, any doubt must be resolved in favor of the insured." <u>Id.</u> Moreover, "an insured may establish a potentiality of coverage under an insurance policy through the use of extrinsic evidence." <u>Id.</u> at 866; <u>see also</u> <u>Litz v. State Farm Fire & Cas. Co.</u>, 695 A.2d 566, 570 (Md. 1997) ("A potentiality of coverage is typically established by the allegations in the tort plaintiff's complaint. Sometimes, however, extrinsic evidence may also be used to establish a potentiality of coverage. When extrinsic evidence, but not the allegations of the complaint, establish a potentiality of coverage, the <u>insured</u> may rely on evidence

13

outside of the complaint." (emphasis added) (citations omitted)). The Maryland Court of Appeals has noted that its policy ensures that an insured "is not foreclosed from receiving the defense to which [it] is entitled merely because the complaint fails to plead allegations that establish a potentiality of coverage under the insurance policies." Cochran, 651 A.2d at 866. However, "an insured cannot assert a frivolous defense merely to establish a duty to defend on the part of [its] insurer." Id.

Here, the underlying complaint is silent as to the involvement of Marquez. Indeed, Marquez is not named anywhere in the complaint. However, Capital City has filed a third party complaint against Marquez and its owner, and has introduced extrinsic evidence that the collapse of the common wall between 55 Bryant Street and 57 Bryant Street was caused by Marquez. Given that Standard Fire's underlying complaint alleges that "[t]he failure of the Defendants to properly excavate and support the structure located at 57 Bryant Street" constituted negligence "in that they failed to comply with the applicable standard of care while performing" the 57 Bryant Street renovations, J.A. 81, and given also that Marquez's involvement in those renovations is undisputed, it cannot be said that the complaint does not seek to hold the named defendants liable for property damage "caused in whole or in part" by Marquez.

14

Because the underlying complaint does not make clear that Marquez conducted the foundation, structural, and underpinning work that led to the collapse of the common wall, Capital City is entitled to rely on its extrinsic evidence to establish those facts and to thereby establish a potentiality of coverage. It was error for the district court to conclude otherwise.

The Underwriters urge us to follow the rule set forth in the Maryland Court of Special Appeals case, Baltimore Gas, which held that an insurer had no duty to defend where the plaintiffs in the underlying tort lawsuit dismissed their claims against all of the defendants except for the general contractor. 688 A.2d at 511. But nothing in the Baltimore Gas case contradicts our holding here. In that case, the plaintiffs in the underlying lawsuit sued a general contractor, a subcontractor, and others for injuries suffered after the plaintiffs' car fell into an excavation pit. The court observed that the plaintiffs in the underlying lawsuit "[u]ltimately . . . chose to pursue their claim only against BGE[, the general contractor], on the theory that BGE was solely responsible for the occurrence" at issue in the case "because of its own negligence." Id. at 507. The tort plaintiffs thus "expressly redefined their theory of BGE's liability." Id. The court stated that "the tort plaintiff's [sic] allegations are central to the determination of coverage." Id. at 510 (original emphasis). It concluded:

15

> BGE cannot compel [the insurer] to provide it with a defense based on claims which, although at one time asserted by the [plaintiffs in the underlying lawsuit], were no longer asserted, because such claims 'will not be generated at trial.' The fact that the plaintiffs never formally amended their complaint to restate the allegations so as to reflect their revised theory of BGE's liability is of no moment.

Id. at 511. But crucial to the court's holding was that discovery showed that the general contractor – and not its subcontractor – had the duty to fill the excavation pit into which the plaintiffs' car fell. While it was undisputed that the subcontractor had been engaged to dig the pit, the evidence also showed that BGE was responsible for filling the pit. 688 A.2d at 507-09. The plaintiffs chose to pursue their claims only against BGE for its negligent failure to fulfill its duty, leading the Baltimore Gas court to conclude that the insurer no longer had a duty to defend.

By contrast, there is not such a clean delineation of which actor owes which duty in this case, in part because the underlying complaint fails to even mention Marquez. But the underlying complaint in this case does not affirmatively present a claim that falls outside the scope of the Policy.[*] Rather, it

---

[*] It is for this reason that the Underwriters' and the district court's reliance on G.E. Tignall & Co., Inc. v. Reliance Nat'l Ins. Co., 102 F. Supp. 2d 300 (D. Md. 2000) is misplaced. As an initial matter, to the extent that the Tignall decision suggests that there is no potentiality of coverage merely because the underlying lawsuit does not mention the named
(Continued)

16

clearly seeks recovery for property damage that was "caused in whole or in part" by the failure to use the appropriate standard of care in performing the renovations. Although Marquez is not mentioned as performing the renovation work that led to the collapse of the wall, Capital City, as the additional insured, is entitled to introduce Marquez's involvement by way of extrinsic evidence. Litz, 695 A.2d at 570. Indeed, the Maryland Court of Appeals has stated that

---

insured, 102 F. Supp. 2d at 307, it incorrectly interprets Maryland law. See, e.g., Cochran, 651 A.2d at 866; Litz, 695 A.2d at 570. Indeed, the Tignall court explicitly recognized that "[e]xtrinsic evidence may be used by the insured to establish the potentiality of coverage." Tignall, 102 F. Supp. 2d at 307. Second, we note that in holding that an underlying tort plaintiff must plead a case of vicarious liability, id., the Tignall court was interpreting the predecessor to the CG 20 10 07 04 Form at issue in this case. As we held above, the plain language of the Endorsement presented here does not contemplate a restriction of coverage to claims of vicarious liability. Finally, we note that the underlying complaint in Tignall, unlike the underlying complaint in this case, stated that the plaintiff "avers that all of these damages were and are due solely to the wrongful and negligent acts and omissions of the Defendants." Tignall, 102 F. Supp. 2d at 307. It is worth noting that the allegations here are not framed to affirmatively exclude the negligent acts or omissions of parties other than the named defendants. Even so, such allegations would not necessarily resolve the question of potentiality of coverage because, again, Maryland has refused to foreclose an insured "from receiving the defense to which [it] is entitled merely because the complaint fails to plead allegations that establish a potentiality of coverage under the insurance policy." Cochran, 651 A.2d at 866; see also Litz, 695 A.2d at 570 (permitting an insured to introduce extrinsic evidence where a complaint lacks allegations to establish potentiality of coverage).

17

> [t]here is an important difference between the duty to defend a lawsuit that affirmatively makes a claim that falls outside of the coverage of the policy, and the duty to defend a lawsuit that fails to allege the elements of a cause of action that if properly alleged and proven would be within the coverage of policy.

Sheets, 679 A.2d at 544-45.  And as noted above, Maryland law rejects the notion that an insured would be "foreclosed from receiving the defense to which [it] is entitled merely because the complaint fails to plead allegations that establish a potentiality of coverage under the insurance polic[y]." Cochran, 651 A.2d at 866.

The Underwriters contend that Standard Fire seeks in the underlying complaint to recover damages only on the theory that Capital City failed to submit appropriate construction plans to the District of Columbia.  If the Underwriters were correct, perhaps this would be a different case.  However, the underlying complaint faults the named defendants for improperly excavating and supporting 57 Bryant Street and for failing "to comply with the applicable standard of care while performing said renovations." J.A. 81 (emphasis added).  It is absurd to think that such allegations rest solely on the submission of construction plans rather than additionally seeking damages for negligence in actually conducting the construction and renovation work.  And again, it is undisputed that Marquez did the foundation work during the course of the renovations.  We

18

therefore find that there is a potentiality of coverage. The Underwriters have a duty to defend Capital City in the underlying tort lawsuit.

## IV.

Capital City argues that the district court should have made clear that, if the Underwriters owe it a duty to defend, then Capital City is entitled to recover expenses, including attorney's fees. The district court did not address this issue below, and the Underwriters did not respond to Capital City's expenses and fees arguments here. We decline to address the question on appeal, and instead will give the district court the opportunity to resolve the issue in the first instance.

## V.

For the foregoing reasons, we conclude that the scope of coverage under the Endorsement extends beyond acts or omissions of Marquez for which Capital City was vicariously liable. The plain language of the Endorsement creates a duty to defend Capital City where Capital City is being held liable for the acts or omissions of Marquez. Moreover, we find that the allegations in the underlying complaint create a potentiality of coverage. Accordingly, we vacate the district court's order granting summary judgment to the Underwriters and remand this

19

case for entry of summary judgment in favor of Capital City and a determination of whether Capital City is entitled to expenses and attorney's fees.

<u>VACATED AND REMANDED WITH INSTRUCTIONS</u>