REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 802

September Term, 2014

_____

JAMES G. DAVIS CONSTRUCTION
CORPORATION

v.

ERIE INSURANCE EXCHANGE

_____

Meredith,
Berger,
Leahy,

JJ.

_____

Opinion by Berger, J.

_____

Filed: October 28, 2015

This appeal arises out of an order of the Circuit Court for Montgomery County, entered on May 30, 2014, granting a motion for summary judgment filed by Erie Insurance Exchange ("Erie"). The circuit court further denied a motion for partial summary judgment filed by James G. Davis Construction Corporation ("Davis"). In granting Erie's motion for summary judgment, the circuit court found that Erie did not have a duty to defend Davis in a tort suit filed in the Circuit Court for Prince George's County, despite the fact that Davis was listed as an "additional insured" on an insurance policy issued by Erie to Erie's subcontractor, Tricon Construction, Inc. ("Tricon").

On appeal, Davis presents one issue for our review, which we have rephrased as follows:

> Whether the circuit court erred in granting Erie's motion for summary judgment and denying Davis's motion for partial summary judgment.

For the reasons that follow, we reverse the judgment entered by the Circuit Court for Montgomery County and remand this case to the Circuit Court for Montgomery County for additional proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Subcontract Agreement and Indemnification

In 2009, Davis served as the general contractor for a home construction project in Washington, D.C. (the "Project"). On January 6, 2009, Davis subcontracted Tricon to provide drywall, insulation, and fireplace services on the Project. The terms of the subcontract agreement between Davis and Tricon (the "Subcontract Agreement"), as

amended on January 22, 2009, provided that:

> To the fullest extent permitted by applicable state law [Tricon] shall indemnify, save harmless [Davis] . . . from any and all claims, and liabilities for property and personal injury, including death, arising out of or resulting from or in connection with any negligent act or omission of [Tricon], its sub-subcontractors, vendors or anyone else for whom [Tricon] is responsible in the execution of the work, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder.

The Subcontract Agreement further provided that this indemnity "shall be insured from an acceptable insurance carrier with minimum A.M. Best rating of A, naming [Davis] as an additional insured by ISO form CG 2010, 11/89 edition endorsement or equivalent . . . ." Pursuant to the Subcontract Agreement, Tricon was to indemnify Davis for up to $1,000,000 per occurrence and up to $2,000,000 in the aggregate for all work performed on the Project.

Upon execution of the Subcontract Agreement, Tricon presented Davis with a certificate of liability insurance as proof that it had procured insurance coverage for Davis as required by the Subcontract Agreement. Attached to the certificate of liability insurance was an additional insured endorsement (the "Certificate Additional Insured Endorsement"). Read together, these documents provided that Tricon was issued a commercial general liability policy by Erie (the "Policy") and that Davis was named as an additional insured on the Policy. The Certificate Additional Insured Endorsement provided the following:

> A. Section II - Who is an insured is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of [Tricon's] ongoing operations performed for that insured.

2

B. With respect to the insurance afforded to these additional insureds, the following exclusion is added:

2. Exclusions
This insurance does not apply to "bodily injury" or "property damage" occurring after:

(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2) That portion of "[Tricon's] work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

The Certificate Additional Insured Endorsement also included a schedule, listing Davis an additional insured under the Policy.

The Policy actually issued to Tricon, however, included an additional insured endorsement (the "Policy Additional Insured Endorsement") with slightly different terms from those in the Certificate Additional Insured Endorsement. The Policy Additional Insured Endorsement provided as follows:

A. Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, *but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:*

*1. [Tricon's] acts or omissions; or*

3

*2. The acts or omissions of those acting on [Tricon's] behalf;*

in the performance of [Tricon's] ongoing operations for the additional insured(s) at the location(s) designated above.

B.  With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1.  All work, including  materials, parts or equipment furnished in connection with such work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2.  That portion of "[Tricon's] work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor  engaged in performing operations for a principal as a part of the same project.

(emphasis added).  The Policy Additional Insured Endorsement further referred to a set of declarations within the Policy.  One such declaration, effective January 22, 2009, indicated that Davis was added onto the Policy as an additional insured.[1]

---

[1] While we predominately refer to Davis as an "additional insured" under the Policy, Davis also qualifies as an "insured" as defined by the Policy.  The Policy provides that "[t]he word 'insured' means any person or organization qualifying as such under Section II - Who Is An Insured."  The terms of the Policy Additional Insured Endorsement amend Section II of the Policy to include Davis as an "insured," subject to certain restrictions in coverage that do not apply to other "insureds."  Davis's status as an "additional insured," therefore, makes it part of a subset within the larger category of "insureds."

## II.    Tort Litigation

As part of its work on the Project, Tricon erected a scaffold, which it owned, at the site of the Project's construction. Another of Davis's subcontractors, American Mechanical Services, subcontracted Frost Fire Insulation ("Frost Fire") to perform air conditioning and insulation work on the Project. On September 24, 2009, two employees of Frost Fire were using Tricon's scaffold to complete their work on the Project when the scaffold collapsed, injuring the two Frost Fire employees. The injured Frost Fire employees alleged that they were authorized to use Tricon's scaffold and were assured by Davis that the scaffolding was safe and secure.

The two injured Frost Fire employees filed suit against Tricon and Davis in the Circuit Court for Prince George's County (the "Tort Litigation"). The Frost Fire employees alleged one count of negligence against Tricon and one count of negligence against Davis. After being served with the Frost Fire employees' complaint, Davis notified Erie of the Tort Litigation and tendered its defense to Erie. Erie, however, declined to assume Davis's defense. Erie claimed that the Policy did not cover Davis, as an additional insured, for Davis's own negligent acts.

## III.    Breach of Contract Litigation

On June 5, 2013, Davis filed a complaint in the Circuit Court for Montgomery County alleging that Erie breached its contract with Davis by failing to honor its duty to defend and

5

indemnify Davis in the Tort Litigation. Davis claimed that the terms of the Policy required Erie to defend Davis in the underlying litigation. Furthermore, Davis requested a declaratory judgment from the circuit court that would declare that Davis is entitled to a defense from Erie in the Tort Litigation; that Davis is entitled to indemnity from Erie with respect to all costs, fees, expenses, settlements and/or judgments paid for or incurred by Davis in the Tort Litigation; that Davis is entitled to reimbursement from Erie for all attorneys' fees Davis incurred defending against the Tort Litigation; and that Davis is entitled to reimbursement from Erie for all attorneys' fees Davis incurred in its lawsuit against Erie.

On February 10, 2014, Davis filed a motion for partial summary judgment in which it alleged that Erie had a duty to defend Davis in the Tort Litigation. Davis asserted that it was added to the Policy as an additional insured and that the claims asserted against it in the Tort Litigation were covered by the Policy. Davis, therefore, claimed that Erie's duty to defend Davis was triggered by the complaint in the Tort Litigation. On February 25, 2014, Erie filed an opposition to Davis's motion for partial summary judgment that also functioned as a cross-motion for summary judgment.

The circuit court heard the parties' cross-motions for summary judgment on April 23, 2014 and issued an oral opinion and order on the motions on May 27, 2014. The court denied Davis's motion for partial summary judgment and granted summary judgment in favor of Erie. In its oral opinion and order, the court, finding no genuine dispute of material fact, concluded that Davis was covered by the Policy as an additional insured. The court further

6

found that Erie did not have a duty to defend Davis in the Tort Litigation because the Policy did not cover Davis for Davis's own negligence, and the complaint in the Tort Litigation "contain[ed] a separate allegation of negligence against Davis for Davis'[s] own acts or omissions." Ultimately, the circuit court concluded that the Policy only covered Davis for claims of vicarious liability "arising out of Tricon's performance."[2] Additionally, the court found that Davis did not qualify for coverage under the Policy as an "indemnitee."[3]

---

[2] In its May 27, 2014 oral opinion and order, the circuit court explicitly acknowledged that the parties disputed whether the Certificate Additional Insured Endorsement could be considered part of the Policy that Erie actually issued to Tricon. Nevertheless, the court analyzed the scope of coverage of the Policy by exclusively referring to the terms of the Certificate Additional Insured Endorsement, without ever mentioning the differing terms of the Policy Additional Insured Endorsement.

[3] The Policy is structured such that Erie has a duty to defend and indemnify its "insured." Before the circuit court, the parties did not dispute that Davis was added to the Policy as an "additional insured." The terms of the Policy Additional Insured Endorsement amend the Policy such that the parties named as "additional insureds," like Davis, are encompassed by the term "insured" as used throughout the Policy. The Policy Additional Insured Endorsement, however, does place some restrictions on "additional insureds" to which other "insureds" are not subject.

Furthermore, if Erie defends an insured "against a 'suit' and an indemnitee of the insured is also named as a party to the 'suit' [then Erie] will defend that indemnitee" provided a list of conditions are met. Erie, therefore, may have a duty, by virtue of the Policy, to defend and indemnify a party who does not qualify as an "insured" under the terms of the Policy.

Critically, Davis did not argue before the circuit court that it was basing its request for Erie to defend it by virtue of its status as an indemnitee. Nevertheless, the circuit court found, *sua sponte*, that Erie was not obligated to defend or indemnify Davis as an "indemnitee of the insured." Neither party challenges the validity of this finding on appeal. In any event, this finding is rendered moot by our holding that Erie is obliged to defend Davis by virtue of Davis' status as an "additional insured." *See* Part II(C), *infra*. Accordingly, it

(continued...)

7

This timely appeal followed.

## DISCUSSION

### I.      Standard of Review

The entry of summary judgment is governed by Maryland Rule 2-501, which provides:

> The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

Md. Rule 2-501(f).

The Court of Appeals has explained the standard of review of a trial court's grant of a motion for summary judgment as follows:

> On review of an order granting summary judgment, our analysis "begins with the determination [of] whether a genuine dispute of material fact exists; only in the absence of such a dispute will we review questions of law." *D'Aoust v. Diamond*, 424 Md. 549, 574, 36 A.3d 941, 955 (2012) (quoting *Appiah v. Hall,* 416 Md. 533, 546, 7 A.3d 536, 544 (2010)); *O'Connor v. Balt. Cnty.*, 382 Md. 102, 110, 854 A.2d 1191, 1196 (2004). If no genuine dispute of material fact exists, this Court determines "whether the Circuit Court correctly entered summary judgment as a matter of law." *Anderson v. Council of Unit Owners of the Gables on Tuckerman Condo.*, 404 Md. 560, 571, 948 A.2d 11, 18 (2008) (citations omitted). Thus, "[t]he standard of review of a trial court's grant of a motion for summary judgment on the law is de novo, that is, whether the trial court's legal conclusions were legally correct." *D'Aoust*, 424 Md. at 574, 36 A.3d at 955.

---

[3] (...continued)
would be premature for us to opine in this case whether Davis qualifies as an indemnitee or what rights may flow as a result of that status. We, therefore, confine our analysis on appeal to the question presented by Davis relating to its status as an "additional insured."

*Koste v. Town of Oxford*, 431 Md. 14, 24-25, 63 A.3d 582, 589 (2013).

We are "obliged to conduct an independent review of the record to determine if there is a dispute of material fact." *Injured Workers' Ins. Fund v. Orient Express Delivery Serv., Inc.*, 190 Md. App. 438, 450-51, 988 A.2d 1120, 1127 (2010) (citing *Wells Fargo Home Mortgage, Inc. v. Neal*, 398 Md. 705, 714, 922 A.2d 538 (2007)). "A material fact is one that will alter the outcome of the case, depending upon how the fact-finder resolves the dispute." *Id.* at 451 (citing *Berringer v. Steele*, 133 Md. App. 442, 470-71, 758 A.2d 574 (2000) (citations omitted)). "Mere general allegations of conclusory assertions will not suffice." *Id.* (citing *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 738, 625 A.2d 1005 (1993)).

## II.    Erie's Duty to Defend Davis as an "Additional Insured"

The issues presented in the instant case hinge, in some part, on this Court's interpretation of the terms of the Policy issued by Erie to Tricon, to which Davis was added as an additional insured. When it comes to the interpretation of the terms of an insurance contract, "Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 779 (1993) (citing *Cheney v. Bell National Life*, 315 Md. 761, 766 (1989)). Rather, "the terms of an insurance contract are to be interpreted utilizing well-established principles that guide the interpretation of contracts generally." *Kendall v. Nationwide Ins. Co.*, 348 Md. 157, 166 (1997) (citing *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388 (1985)). "Where terms are ambiguous, extrinsic and parol

9

evidence may be considered to ascertain the intentions of the parties." *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 508 (1995) (citing *Cheney*, *supra*, 315 Md. at 766-67). "If no extrinsic or parol evidence is introduced, or if the ambiguity remains after consideration of extrinsic or parol evidence that is introduced, it will be construed against the insurer as the drafter of the instrument." *Cheney*, *supra*, 315 Md. at 767 (citing *Pac. Indem.*, *supra*, 302 Md. at 388-89).

Under Maryland law, when determining whether an insurer is under a duty to defend its insured, a court must answer two questions: "(1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? [and] (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage?" *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 103-04 (1995) (quoting *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 193 (1981)). "The first question focuses upon the language and requirements of the policy, and the second question focuses on the allegations of the tort suit." *Capital City Real Estate, LLC v. Certain Underwriters at Lloyd's London, Subscribing to Policy Number: ARTE018240*, 788 F.3d 375, 379 (4th Cir. 2015) (quoting *St. Paul Fire & Marine Ins. Co. v. Pryseski*, *supra*, 292 Md. at 193).

Critically, "[e]ven if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy." *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 408 (1975) (citing *U.S. Fid. & Guar. Co. v. Nat'l Paving & Contracting Co.*, 228 Md.

10

40, 54 (1962)). Furthermore, "[i]f there is any doubt as to whether there is a duty to defend, it is resolved in favor of the insured." *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 16 (2004) (citing *Aetna Cas.*, *supra*, 337 Md. at 107).

On appeal, and in its motion for partial summary judgment, Davis contends that the terms of the Policy required Erie to assume Davis's defense in the Tort Litigation. In analyzing this claim, we turn our attention to the terms of the Policy and the scope of coverage it affords. First, we must resolve the discrepancy between the Certificate Additional Insured Endorsement and the Policy Additional Insured Endorsement to determine what the Policy actually provides regarding "additional insureds."

### A.     Effect of Certificate of Insurance

The United States District Court for the District of Maryland examined a similar issue in the case of *G.E. Tignall & Co. v. Reliance Nat. Ins. Co.*, 102 F. Supp. 2d 300 (D. Md. 2000). In *Tignall*, a general contractor agreed to have a subcontractor perform lead paint abatement work on a school renovation project. *Id.* at 301. The general contractor required the subcontractor to maintain liability insurance related to lead paint abatement at the school, so the subcontractor presented the general contractor with a certificate of insurance. *Id.* The certificate of insurance described a number of insurance policies procured for the subcontractor by an independent insurance broker. *Id.* The certificate identified the general contractor as "an additional insured for liability incurred because of the lead abatement work at the school." *Id.* When a student at the school sued the general contractor for alleged lead

11

poisoning during the renovation period, the subcontractor's insurer refused to defend and indemnify the general contractor, claiming that its policy only required it to defend the general contractor "where [the subcontractor's] own operations were alleged as the basis of liability." *Id.* at 302.

The general contractor in *Tignall* alleged that its subcontractor's insurer had a duty to defend the general contractor against the lead poisoning suit based on the certificate of insurance the subcontractor had presented to the general contractor. *Id.* at 302-03. The court in *Tignall*, however, found that the terms of the certificate of insurance were not binding on the subcontractor's insurer because "[o]rdinarily, the presentation of a certificate alone does not create coverage or legal duties." *Id.* at 304. The *Tignall* court highlighted the fact that the certificate was not prepared by the subcontractor's insurer, but rather by an independent insurance broker, so its terms could not bind the insurer. *Id.* at 303.

Similarly, in the instant case, the certificate of liability insurance that Tricon presented to Davis upon execution of the Subcontract Agreement was not produced by Erie, but rather was produced by V W Brown Insurance Service, an independent insurance broker. The text of the certificate of liability insurance in the instant case further provides that "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND . . . DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW." In light of these facts, we hold that the terms of the Certificate Additional Insured Endorsement are not a part of the Policy and, therefore, are not binding on Erie.

12

Nevertheless, for the reasons that follow, we hold that Erie is bound to the terms of the Policy Additional Insured Endorsement, which constitute part of the Policy. Accordingly, the circuit court erred by exclusively analyzing the scope of coverage afforded by the Policy under the terms of the Certificate Additional Insured Endorsement.

## B. Scope of Coverage Afforded to Davis by the Policy

Having determined which terms comprise the Policy, we now turn our attention to analyzing the scope of insurance coverage provided by those terms. The circuit court found that the Policy did not cover Davis for Davis's own negligence, but rather for "the acts or omissions of the named insured -- that is Tricon -- or the acts or omissions of those acting on the named insured's behalf during ongoing operations for the additional insured." The circuit court, therefore, concluded that the terms of the Policy only covered Davis for claims of vicarious liability based on the actions of Tricon as Davis's subcontractor.

In analyzing the scope of coverage afforded by the Policy, the circuit court explicitly relied on two cases: *G.E. Tignall & Co., Inc. v. Reliance National Insurance Co.*, *supra*, and *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 113 Md. App. 540, 546 (1997). Both *Tignall* and *Baltimore Gas* deal with factual situations similar to the instant case, in which a general contractor is added to the insurance policy of a subcontractor as an additional insured but the insurer refuses to defend the general contractor in a tort suit. *See Tignall*, *supra*, 102 F. Supp. 2d at 301-02; and *Baltimore Gas*, *supra*, 113 Md. App. at 546-552. Nevertheless, *Tignall* and *Baltimore Gas* are not directly applicable to the instant case

13

because the terms of the additional insured endorsements in both cases materially differ from the language of the applicable Policy Additional Insured Endorsement in the instant case.

The additional insured endorsements in *Tignall* and *Baltimore Gas* mirror the language of the Certificate Additional Insured Endorsement in the instant case in that they limit coverage for the additional insured to "liability arising out of" Tricon's work on the Project. As previously discussed, the Certificate Additional Insured Endorsement is not part of the Policy and is therefore not binding on Erie in the instant case. Accordingly, we must analyze the Policy's scope of coverage using the terms of the Policy Additional Insured Endorsement, which limits coverage for the additional insured to "liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by" Tricon's work on the Project.

Both the Certificate Additional Insured Endorsement and the Policy Additional Insured Endorsement are standard form endorsements published by the Insurance Services Office, Inc. ("ISO"), an industry-supported organization that develops standard insurance policies. 4 Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner and O'Connor on Construction Law* § 11:6 (2010). The Certificate Additional Insured Endorsement uses the terms of the ISO's standard form additional insured endorsement from the year 2000. The Policy Additional Insured Endorsement uses the terms of the ISO's standard form additional insured endorsement as revised in 2004.

14

Although Maryland courts have not had an opportunity to analyze an insurance policy utilizing the "caused, in whole or in part, by" language of the Policy Additional Insured Endorsement, the Fourth Circuit Court of Appeals recently analyzed language akin to the Policy Additional Insured Endorsement in the Policy issued to Tricon in this case. In *Capital City Real Estate, LLC v. Certain Underwriters at Lloyd's London, Subscribing to Policy Number: ARTE018240, supra*, 788 F.3d at 379-380, the Endorsement was copyrighted by ISO and explicitly covered Capital City (a real estate development company) as an additional insured for a renovation project, "but only with respect to liability for . . . 'property damage' . . . caused in whole or in part by [a subcontractor's] acts or omissions; or [t]he acts or omissions of those acting on [the subcontractor's] behalf." *Id*.

Recognizing that the "Maryland Court of Appeals has not construed the Endorsement language presented," the Fourth Circuit expressly held that the language is quite clear that coverage is provided for the real estate development company, an additional insured, for "property damages . . . caused in whole or in part by" the subcontractor. *Id*. Thus, the Fourth Circuit construed the similar Endorsement language at issue here to mean that an insurer has a duty to defend an additional insured "only if the underlying pleadings allege that" the named insured, "or someone acting on its behalf, proximately caused" the injury or damage. *Id*. (quoting *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 598 (5th Cir. 2011).

Notably, the "liability . . . caused, in whole or in part, by" language used in the Policy Additional Insured Endorsement indicates that the coverage afforded to Davis, as an

15

additional insured, cannot be limited exclusively to claims of vicarious liability for Tricon's acts. In our view, it is unreasonable to interpret the term "liability" as used in the 2004 version of the ISO standard form additional insured endorsement as referring to "vicarious liability" because vicarious liability is an all or nothing proposition and thus a party could not be vicariously liable 'in part' for [the named insured's] acts.

This Court has defined "vicarious liability" as "the attribution of a wrongdoer's actions to an innocent third party by virtue of the relationship between the wrongdoer and the third party." *Rivera v. Prince George's Cnty. Health Dep't*, 102 Md. App. 456, 475 (1994). Indeed, because vicarious liability is used to impute liability to "an innocent third party," such liability cannot be caused merely "in part." The third party to whom liability is imputed would not be "innocent" unless the wrongdoer's acts caused the liability "in whole." We, therefore, hold that the word liability in the policy at issue relates to proximate causation and not vicarious liability.

This holding has been echoed in *Pro Con, Inc. v. Interstate Fire & Cas. Co.*, 794 F.Supp. 2d 242 (D.Me. 2011). There, the United States District Court for the District of Maine "conclude[d] that [the defendant insurance company], by including the language 'in whole or in part' in its [additional insured endorsement], specifically intended coverage for additional insureds to extend to occurrences attributable in part to acts or omissions by both the named insured *and* the additional insured." 794 F. Supp. 2d at 256-57 (emphasis in original).

16

We, therefore, hold that under the Policy Additional Insured Endorsement in the instant case, Erie has the duty to defend Davis even if the allegations are not based solely on vicarious liability as long as Davis is alleged to be liable, in whole or in part, by the acts or omissions of Tricon. Accordingly, the circuit court erred in declaring that the terms of the Policy limited coverage of Davis, as an additional insured, to claims of vicarious liability based on Tricon's actions.

### C. Erie's Duty to Defend Davis Was Triggered by the Tort Litigation

Now that we have determined the terms that comprise the Policy, and the scope of coverage provided by those terms, we must determine whether the allegations in the complaint in the Tort Litigation trigger Erie's duty to defend Davis, as an additional insured, under Maryland law. "In order for an insurer to be obligated to defend an insured, the underlying tort suit need only *allege* action that is *potentially covered* by the policy, no matter how attenuated, frivolous, or illogical that allegation may be." *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 643 (1996) (emphasis in original).[4] The primary focus of this analysis is

---

[4] Erie argued, before the circuit court and this Court, that it is improper to use a "potentiality analysis" to determine whether Erie had a duty to defend Davis in the instant case. Rather, Erie claims that the duty to defend issue in the instant case should be resolved pursuant to the holding of the Court of Appeals in *N. Assur. Co. of Am. v. EDP Floors, Inc.*, 311 Md. 217, 226 (1987). In that case, the Court of Appeals held that "when . . . the question of coverage or exclusion under the language of the insurance policy is separate and distinct from the issues involved in the tort suit, the 'potentiality rule' normally has no application." *N. Assur. Co. of Am. v. EDP Floors, Inc.*, 311 Md. 217, 226 (1987) (citing *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 194 (1981)).

(continued...)

17

the allegations in the Tort Litigation complaint, as opposed to the specific claims asserted. *Baltimore Gas*, *supra*, 113 Md. App. at 559. "[W]here a potentiality of coverage is uncertain from the allegations of a complaint, any doubt must be resolved in favor of the insured." *Aetna Cas.*, *supra*, 337 Md. at 107.

The complaint in the Tort Litigation alleges one count of negligence against Tricon and one count of negligence against Davis. The complaint asserts that Tricon "owned and maintained" the scaffolding that collapsed and injured the Frost Fire employees. The complaint further claims that the injured Frost Fire employees "were authorized to use the scaffolding and were assured by Defendant Davis and its employees that the scaffolding was safe and secure." The complaint maintains that **both** Tricon and Davis failed to exercise reasonable care "in erecting, positioning, and maintaining the scaffolding" that ultimately injured the Frost Fire employees. Furthermore, the complaint alleged that **both** Tricon and Davis acted as the "controlling employer at the construction site" and that they **both** "had

---

⁴ (...continued)
The insured in *EDP Floors* was sued because its employee had injured an individual in the course of unloading floor tiles from a truck. Unlike in the instant case, the insurance policy that was at the center of *EDP Floors* contained an explicit, specific coverage exclusion for injuries resulting from the "loading or unloading of . . . any automobile." Accordingly, "the potentiality analysis" was inappropriate in *EDP Floors* because the resolution of the suit against the insured was not going to affect whether the policy covered the alleged injury. In the Tort Litigation, however, essentially identical allegations are lodged against both Tricon and Davis which do not constitute a clear exclusion to coverage under the Policy. The "potentiality analysis" is, therefore, appropriate in the instant case because the resolution will determine which party was the proximate cause of the Frost Fire employees' injuries, which in turn will determine whether or not Davis is covered by the Policy.

general supervisory authority over the construction site including the authority to correct safety violations."

As previously discussed, the terms of the Policy in the instant case provide coverage to Davis for any liability "caused, in whole or in part, by" Tricon's work on the Project. A number of federal district courts, as well as the Fourth Circuit Court of Appeals, have interpreted this language as limiting coverage for the additional insured to liability proximately caused by acts of the named insured. Erie, therefore, has a duty to defend Davis against any liability that could potentially be proximately caused by Tricon's acts.

The complaint in the Tort Litigation theorizes that the negligence of Tricon, the negligence of Davis, or the negligence of both Tricon and Davis contributed to the injury of the Frost Fire employees. By asserting virtually identical allegations against both Davis and Tricon for a single tortious injury, the Tort Litigation complaint suggests a lack of awareness regarding the true cause of the Frost Fire employees' injuries. Indeed, the Tort Litigation complaint alleges that "as a proximate result of the negligence of [Tricon] and the resulting accident, [the Frost Fire employees] were caused to suffer significant personal injuries." Similarly, the Tort Litigation complaint alleges "[t]hat as a proximate result of the negligence of Defendant Davis and the resulting accident, [the Frost Fire employees] were caused to suffer significant personal injuries." Presumably, the claim of negligence asserted against Tricon is grounded on the fact that Tricon, as the owner of the scaffolding, was responsible for maintaining the scaffolding such that it would not collapse when used. Furthermore, the

19

claim of negligence against Davis is likely based on the fact that Davis, as the general contractor, had a duty to ensure the safety of the entire Project construction site, including all construction equipment used.

The trial court erred in holding that the additional insured endorsements provided no coverage to Davis if the plaintiffs' complaint in the Tort Litigation alleged any negligence on Davis's part. Indeed, the endorsements contain no language excluding coverage for Davis's alleged acts of negligence. Instead, they require only, in the case of one endorsement, that Davis's alleged liability be caused in whole, or in part, by Tricon's acts or omissions in the performance of Tricon's ongoing operations for Davis at the Project, and in the case of the endorsement attached to the certificate of insurance, liability arising out of Tricon's ongoing operations performed for Davis. As such, the trial court erred in concluding that those Policy conditions could not be met if the complaint contained any allegations that Davis was alleged to be negligent for any of its own acts or omissions, even if Tricon was also named as a defendant and alleged to be negligent in the performance of *its* work for Davis.

The trial court did not examine the complaint to determine whether Davis's liability was alleged to be "caused in whole, or in part" by Tricon's acts or omissions in the performance of Tricon's ongoing operations for Davis at the Project, or whether Davis's liability was alleged to arise out of Tricon's ongoing operations performed for Davis. Had it conducted such an analysis, it would have concluded that Davis's liability in the Tort

20

Litigation is alleged to be "caused in whole, or in part," by Tricon's "acts or omissions . . . in the performance" of its "ongoing operations" for Davis at the Project. Those same allegations compel the conclusion that Davis has been sued for "liability arising out of" Tricon's "ongoing operations performed for" Davis.

Plaintiffs' complaint alleges that they were injured at the Project, where Davis "acted as the general contractor and controlling employer . . . and had general supervisory authority over the construction site including the authority to correct safety violations." The plaintiffs maintain that their injuries occurred when in the course of performing their duties on the Project they "were working on scaffolding owned and maintained by Defendant Tricon when the scaffolding collapsed." In their separate count against Tricon, they recite various acts or omissions of Tricon with respect to its scaffolding work and responsibilities which they allege to be negligent breach of duties by Tricon to plaintiffs and the proximate cause of their injuries. Plaintiffs' allegations against Davis are that, as general contractor, in the exercises of its supervisory authority, it should have "exercise[d] reasonable care in erecting, positioning, and maintaining scaffolding," which the complaint proceeds to specify.

The allegations of the complaint demonstrate that the claim of liability against Davis falls within the terms of the additional insured endorsements of the Policy. They cannot be read to mean anything other than that Davis's liability -- its alleged negligence with respect to supervising safety relating to the scaffolding work -- is claimed to be "caused in whole, or in part, by . . . [Tricon's] acts or omissions . . . in the performance of" Tricon's scaffolding

21

work for Davis at the Project.  Indeed, the plaintiffs have sued Davis for liability "arising out of" Tricon's scaffolding work being "performed" by it for Davis.

In short, the allegations in the Tort Litigation contain claims against Davis covered by the Policy's endorsements.  Nevertheless, even if it were not clear from the allegations that Davis was being sued for "liability . . . caused in whole, or in part," by Tricon's scaffolding work for Davis, or "arising out of" Tricon's scaffolding work, Erie would still have a duty to defend because the allegations recited above establish at least the "*potentiality* that the claim could be covered*" by the Policy's endorsements.  *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407 (1975) (*citing United States Fid. & Guar. Co. v. Nat'l Paving & Contracting Co.*, 228 Md. 40, 54 (1962)).  Accordingly, the circuit court erred in declaring that the Policy created no duty for Erie to defend Davis in the Tort Litigation.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED.  CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.**

22